KAUFMANN DEPARTMENT STORES SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KAUFMANN DEPARTMENT STORES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 106133, 106753.   Promulgated September 9, 1943.

*W. A. Seifert, Esq., William Wallace Booth, Esq.,* and *A. G. Wallerstedt, C. P. A.,* for the petitioners.

*Orris Bennett, Esq.,* for the respondent.

660

664

666

## OPINION.

LEECH, *Judge*: The petitioner, Securities, contends that it is entitled to the larger of the credits under sections 26 (c) (1) and 26 (c) (2) of the Revenue Act of 1936.[1] Credit is claimed under both of these sections by reason of the provisions of the collateral trust agreement executed June 15, 1928, and referred to in our findings. Petitioner contends that the subsequent agreement of June 10, 1936, was merely an amendment extending the period of the original contract of June 15, 1928, reducing the interest rate and sinking fund requirements of that instrument; that the original contract, so amended, was in full force and effect in the taxable years; that it expressly dealt with and restricted the payment of dividends within the purview of section 26 (c) (1), and also expressly dealt with the disposition of earnings of the taxable years and required them to be paid or irrevocably set aside, within the taxable year in which earned, in or for discharge of indebtedness incurred prior to May 1, 1936, within the purview of section 26 (c) (2).

Respondent contends, first, that the contract of June 10, 1936, did not have the effect of merely amending the existing contract but was a new contract which embodied by reference some of the terms of the former contract. It is then argued that the indebtedness paid in the taxable years was incurred under the new contract and consequently no credit is allowable under section 26 (c). His second contention is that, even though the controlling contract was executed and the indebtedness incurred prior to May 1, 1936, there was no restriction imposed by the contract of the character specified by section 26 (c) as entitling petitioner to either one of the credits claimed.

As to respondent's first contention we do not agree that a new indebtedness was created by the contract of June 10, 1936. The transaction did not in fact extinguish the old debt created in 1928. Securities paid nothing. The only payments were by the banks and these were in the acquisition of the notes of the petitioner which remained outstanding and unpaid. It was the intention of the parties that the old debt not be extinguished. They intended only that its maturity date be extended, and this is what was done. Respondent calls attention to the fact that Securities had the assets and credit necessary to obtain funds sufficient to have paid the notes at maturity. The answer to this is that they did not pay the debt, but, on the other hand, procured an extension of the time for payment from the then creditors.

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph

This it had a perfect right to do and the fact that a tax saving was the inducing motive for this action does not deprive it of that right. *Gregory* v. *Helvering*, 293, U. S. 465; *Bullen* v. *Wisconsin*, 240 U. S. 625; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; *Marshall* v. *Commissioner*, 57 Fed. (2d) 633.

Having reached the conclusion that the old debt was not extinguished, the question as to whether the contract of June 10, 1936, was a new and separate agreement or merely an amendment of the existing contract of June 15, 1928, appears to be immaterial, since it unquestionably carried the same restrictive terms as the latter contract and Securities was bound by such restrictions continuously from June 15, 1928, to and including the taxable years with respect to the unextinguished indebtedness. The conditions as to time of execution of the restrictive agreement prescribed by section 26 (c) have, therefore, been met. *Haskelite Manufacturing Corporation*, 44 B. T. A. 636; affd., 128 Fed. (2d) 902; *Commissioner* v. *Sun Pipe Line Co.*, 126 Fed. (2d) 888; *Commissioner* v. *Struthers Iron & Steel Co.*, 132 Fed. (2d) 995.

This brings us to the second contention by the respondent, that other conditions of the restrictive agreement here do not meet the requirements of section 26 (c) (1) or (2). By section 14 of article III of the trust indenture it is provided that Securities "* * * will not pay or declare any dividend, except dividends payable in shares of stock of the Company * * *." This provision meets the requirement of section 26 (c) (1) that the contract expressly deal with the payment of dividends but, on the other hand, it does not prohibit but expressly permits the payment of dividends in stock.

In answer to this Securities points out that it was only authorized by its charter to issue common stock and the shares so authorized were already issued. It argues that this condition, together with section 14 of the trust indenture, resulted in its being precluded from paying a dividend of any character. The argument, however, disregards the requirement that the prohibition be embodied in the contract under which the credit is claimed. We cannot go beyond the contract and supply the prohibition from a charter restriction. *Helvering* v. *Northwest Steel Mills*, 311 U. S. 46. Nor does it avail the

because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

petitioner that the restriction exists by reason of some condition neither fixed nor controlled by the contract, and especially a restriction which is subject to change or removal by action on the part of the petitioner. *United States* v. *Dakota Tractor & Equipment Co.*, 125 Fed. (2d) 20. The contract upon which petitioner relies does not prohibit it from charter amendment. The Corporation Law of the State of Delaware (ch. 65, art. 1, sec. 26) permits such amendment at any time.

The further, and strong, argument is made that even if the payment of a dividend in stock were possible it would be a nontaxable dividend and that we should construe section 26 (c) (1) so as to limit the meaning of the word "dividends" to "taxable dividends." It is, of course, settled that a common stock dividend on common stock does not constitute income to the recipient. *Eisner* v. *Macomber*, 252 U. S. 189; *Helvering* v. *Griffiths*, 308 U. S. 355; *Helvering* v. *Sprouse*, 318 U. S. 604. But here we are dealing with a statute granting a special credit in the nature of a deduction. Such a statute requires strict construction and the taxpayer must show exact compliance with its conditions. *Helvering* v. *Ohio Leather Co.*, 317 U. S. 102; *Helvering* v. *Northwest Steel Mills*, *supra*. Although Congress there used the word "dividends" without qualifying or limiting its meaning, yet in some of the first cases arising under the cited section we accepted the construction of the statute for which petitioner contends. *Paraport Theatre Leasing Corporation*, 44 B. T. A. 108; *Oswego Falls Corporation*, 46 B. T. A. 801; reversed on another ground, *Commissioner* v. *Oswego Falls Corporation*, 137 Fed. (2d) 173. See also *Bates Valve Bag Corporation* v. *Higgins*, —— Fed. Supp. —— (June 24, 1943) However, in later decisions we have held that where the contract did not forbid or expressly permitted the payment of "stock dividends," without limitation of that term to those taxable or nontaxable, and taxable stock dividends could therefore have been paid without violating the terms of the contract, the requirements of section 26 (c) (1) were not met. This view has received approval by decisions of several of the Circuit Courts. *Oregon Pulp & Paper Co.*, 47 B. T. A. 772; *Helms Bakeries*, 46 B. T. A. 308; *Valentine-Clark Corporation*, 46 B. T. A. 821; affd., 137 Fed. (2d) 481; *United States* v. *Dakota Tractor & Equipment Co.*, *supra; Commissioner* v. *Columbia River Paper Mills*, 127 Fed. (2d) 558; *Northwestern Steel & Wire Co.*, 1 T. C. 1114. This, of course, is merely an application of the rule that the restriction must be one effected by the contract itself and not by extrinsic conditions. In such latter case the payment of a taxable stock dividend might be a violation of a charter provision or a statute, but it would not be a violation of a contract within the statute. We adhere to this rule and hold that this petitioner is not entitled to credit under section 26 (c) (1).

The credit claimed under section 26 (c)(2) is upon the contention that the sinking fund requirements of the trust indenture, as set out in our findings, obligated Securities to set aside and pay from its earnings of each of the taxable years the amounts paid in such year. Upon examination of the conditions laid down by that instrument, we do not agree. There is nothing in the instrument expressly requiring the setting aside or the use of income of the current year to pay the sinking fund installments nor are the amounts to be paid computed as a percentage of earnings. Of the total amount payable in each year, $240,000 was to be paid even if there were no earnings. The additional amount payable was to be fixed by the earnings from November of the prior year to the same month of the current year. Moreover, Securities is given the right to buy in its outstanding notes without restriction on the source of the funds so used and turn in these notes to the trustee in satisfaction of its sinking fund obligation. Cf. *Fox River Paper Co.*, 44 B. T. A. 986; *Northwestern Steel & Wire Co.*, *supra*. We hold that this petitioner is not entitled to the credit claimed under section 26 (c)(2).

The next issue is whether petitioner, Securities, is entitled to credit for the year 1937 under section 351 (b)(2)(B) of the Revenue Act of 1936 as amended by section 355 (b) of the 1937 Act. The material part of these sections is set forth in the margin.[2] On its personal holding company tax return Securities claimed a credit against adjusted net income of the sum of $465,000, as having been used or irrevocably set aside to pay or retire indebtedness incurred prior to January 1, 1934.

The respondent disallowed any credit for that year and determined a deficiency in surtax in the amount of $265,163.29. In arriving at the amount of the credit, Securities included two notes purchased August 4, 1936, and December 16, 1936, in the respective amounts of $40,000 and $60,000, because the notes were not surrendered to the trustee until April 30, 1937. It did not include in its claimed credit a note of $35,000 purchased on May 1, 1937, and surrendered to the trustee on December 1, 1938. The respondent contends that the notes purchased and cash surrendered to the trustee were not made to retire

---

[2] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

(b) Definitions.—As used in this title—

* * * * * *

(2) The term "undistributed adjusted net income" means the adjusted net income minus the sum of:

* * * * * * *

(B) Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness.

"SEC. 355. UNDISTRIBUTED ADJUSTED NET INCOME.

"For the purposes of this title the term 'undistributed adjusted net income means the adjusted net income (as defined in section 356) minus—

"(a) * * *

"(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934 if such amounts are reasonable with reference to the size and terms of such indebtedness."

an indebtedness incurred prior to January 1, 1934; that, in any event, the two notes purchased in 1936 aggregating $100,000 could only be taken as a credit in 1936 and not in 1937. The respondent argues that the indebtedness incurred under the original trust indenture of June 15, 1928, which became due on June 15, 1936, was discharged and that a new debt was created under the agreement of June 10, 1936. We have already held, however, that the original debt was not discharged. Nevertheless, we are convinced that the date of purchase of the notes and not the date of their surrender to the trustee controls the year in which credit can be taken. When the corporation purchased its own notes it thereby reduced its indebtedness. See *Transylvania R. Co.* v. *Commissioner*, 99 Fed. (2d) 69. Securities improperly took credit in 1937 for the sum of $100,000, but is properly entitled to an additional credit of $35,000. In computing its adjusted net income for 1937, the credit allowable under the applicable sections of the revenue act is $400.000.

The remaining issue is whether the petitioner, Stores, is liable for the deficiencies found with interest, as transferee. Liability is denied on the ground that under the merger agreement it exchanged its own new stock for its old stock. It asserts that the stockholders of Securities received the assets and are the real transferees. We are concerned only with Stores. Article IV, section 7 B of the agreement of merger provides that the shares of preference and common stock received in exchange for the old common shares of Stores, owned by Securities, shall be distributed among the stockholders of Securities pro rata in proportion to their respective holdings of stock in Securities. Such distribution left Securities without assets to discharge its indebtedness. Obviously to meet this situation it was provided in article VII of the articles of merger that "* * * all rights of creditors and all liens upon the property of any of the constituent corporations shall be preserved unimpaired * * *; and all debts, liabilities and duties of any of the constituent corporations shall forthwith attach to the Surviving Corporation [petitioner transferee] and may be enforced against it to the same extent as if * * * incurred or contracted by it * * *" The distribution to the stockholders of Securities, and the assumption of liabilities by Stores, imposed a legal and equitable liability upon the transferee. Many decisions so hold. We cite but two. *Helvering* v. *Wheeling Mold & Foundry Co.*, 71 Fed. (2d) 749; certiorari denied, 293 U. S. 603; *Shepard* v. *Commissioner*, 101 Fed. (2d) 595, 599; certiorari denied, 307 U. S. 639.

We hold the petitioner, Stores, is liable as transferee for the deficiencies determined against the petitioner, Securities.

*Decisions will be entered under Rule 50.*