**ROYAL THEATRE CORPORATION, Inc., v. UNITED STATES.**

**FITE BROS. THEATRE CO. v. UNITED STATES.**

**Nos. 4915, 4916.**

District Court, D. Kansas, First Division.

May 2, 1946.

Deputy G. Warrick, Paul G. Koontz, and Leland Hazard, all of Kansas City, Mo., and Angus Roy Shannon, Jr., of Chicago, Ill., for plaintiffs.

Andrew D. Sharpe and Harold D. Cohen, Sp. Assts. to the Atty. Gen., Randolph Carpenter, of Topeka, Kan., U. S. Atty. for the District of Kansas, and Eugene W. Davis, of Topeka, Kan., Asst. U. S. Atty. for the District of Kansas, for defendant.

HELVERING, District Judge.

These are consolidated actions for refund of social security taxes and interest thereon paid for the years 1937 through 1940, together with interest from the dates of payment.

For a number of years prior to 1932, W. D. Fite and his brother, as partners, had operated the Kansas Theatre in Kansas City, Kansas. W. D. Fite, as an individual, operated the Royal Theatre in Salina, Kansas. In January of 1932 the two brothers organized, in Delaware, the Fite Brothers Theatre Company, a corporation and one of the taxpayer plaintiffs, and W. D. Fite and his brother transferred their interests in the Kansas Theatre to the corporation. In May of 1932, W. D. Fite transferred the Royal Theatre to the corporation in return for stock. He later became the sole stockholder, except for qualifying shares, of this corporation and was its president and treasurer. In December of 1936, W. D. Fite organized the Royal Threatre Corporation, the other taxpayer plaintiff, in Kansas. On January 1, 1937, the Fite Brothers Theatre Company transferred the Royal Theatre in Salina to the Royal Theatre Corporation in exchange for all of its stock which on the same day was sold to W. D. Fite for $1,400. The assets of this corporation, following the transfer to it of the Royal Theatre, were about $12,000. By this means W. D. Fite became the owner of all the stock of the two corporations, except qualifying shares, and was president of both companies, the business of which was limited to the operation of the two theatres.

At the time of his acquisition of the stock of the Royal Theatre Corporation, January 1, 1937, W. D. Fite entered into separate "booking, buying and management" contracts with each of the corporations whereby each corporation purportedly employed him to buy and book motion picture film on its behalf and to generally manage the theatre operations, determining all matters of policy and questions of remodeling, repair, alteration, etc., of the physical properties, and devoting only so much of his time and attention to such management and booking as in his judgment seemed necessary. Under these contracts Fite was to be reimbursed for all expenses incurred in the management, operation, or maintenance of the theatres, or in the buying and booking of film. The contracts provided that Fite was to be paid fifteen percent of gross receipts as compensation for his services and was not to be personally liable for any costs or expenses; they expressly provided that the corporations should have no control over Fite with respect to his time or activities and that he was not to be an employee of the corporations.

The contracts between Fite and the two taxpayers were identical except for the respective names of the corporations and were extended throughout the years in question with no material change. Subsequent to the filing of claims for refund, both corporations were dissolved and their assets were distributed to W. D. Fite as the beneficial owner of all of the capital stock.

Fite was assisted in the operation and management of the taxpayer's affairs by C. N. White who was also secretary-treasurer of the two corporations. Federal unemployment taxes for the years 1937 through 1940 were assessed and collected with respect to the compensation of both men and these actions were brought to recover said payments and the interest paid thereon. The taxpayers contend that Fite was an independent contractor and that White was his employee and that the compensation which they received from the corporations for their services was not subject to social security taxes.

An officer of a corporation is an employee of the corporation and the com-

pensation which he receives for his services as such officer is subject to social security taxes. Nicholas v. Richlow Manufacturing Co., 10 Cir., 126 F.2d 16. It is clear, therefore, that both Fite and White were employees of the plaintiff corporations and recovery in these actions can be sustained only upon the theory that they received no compensation as officers and that the services which they performed for the corporations and for which they were compensated were performed only as independent contractors. The Bureau of Internal Revenue made a determination that the compensation which these two men received from the taxpayers in the years in question constituted remuneration for services which they performed as officers, hence as employees, and assessed the unemployment taxes acccordingly. The plaintiffs have the burden of proving that the services performed by these two men were separate and distinct from their duties and functions as officers or supervisory employees of the corporations. The question, then, is whether the compensation with respect to which the taxes were assessed was paid to these men for services rendered as officers and employees of the corporations or as independent contractor and an employee of the contractor.

■ The usual citeria for determination of the existence of the employer-employee relationship may become of slight assistance when the taxpayer shrouds that relationship in a cloak of artifice and fiction. Before such tests can be applied, the cloak must be removed and the subject viewed in naked reality. Contractual fictions, like the corporate form, may be subjected to the penetration of thorough judicial inquiry. Although it may be true that these officers rendered some services to the plaintiff corporations which might legally have been performed by independent contractors, that factor is not decisive of the issues in these cases. Neither are the declarations in the contracts that Fite was not an employee and that he was not to be controlled by the plaintiffs of great probative value. The "right of control" test is recognized only as one which is "generally" convenient. Obviously an officer of a corporation, particularly where the corporation

is wholly owned by him, is subject only to control by himself. The only practicable effect of these contracts and, apparently, their purpose seems to have been to attribute a title of Fite's own choice to his relationship with his alter ego, in the hope that the taxing authorities would look no farther than the frontispiece.

The "control" test cannot be applied to a situation such as this, where an officer of a corporation performs his corporate duties in the role of an independent contractor, with the same finality with which it might be applied to outsiders who perform services for the corporation under arrangements made by the parties dealing at arm's length.

■ It appears that no service which either Fite or White performed under the contracts was beyond the scope of their duties as principal officer and secretary-treasurer of the corporations and that most of the services which they rendered ostensibly as independent contractor and employee could legally have been performed only in their official capacities. The by-laws of the corporations defined the scope of the duties of the president as embracing the "general and active management of the business of the corporation" and conferred upon him the "general powers and duties of supervision and management usually vested in the office of president of a corporation". The contract between Fite and the plaintiff corporations likewise gave him authority to determine all policies with respect to the operation and maintenance of the corporations and he admitted in his deposition that in rendering his services under the contracts he exercised the same authority which he had as president of the respective corporations. In like manner the activities of White under his employment by Fite, purportedly acting under the contractual authority, were covered under his corporate responsibilities as set forth in the by-laws.

■ Officers of a corporation cannot ordinarily delegate powers which involve the exercise of judgment and discretion and which should be exercised by them in person. McQuade v. Stoneham, 263 N.Y. 323, 189 N.E. 254. It is entirely inconsistent

with the principles of corporate organization for all right of control over the business of a corporation to be taken from its officers and board of directors and delegated to an independent contractor. Here the contract purported to delegate the determination of all questions of policy to an independent contractor. Of course, that independent contractor and the corporate officer were one and the same; but, if it be said that this removes the vice of an otherwise improper delegation of authority, the answer is that when one seeks to assume an appearance of legality and virtue he does not pretend sin in order to explain it away. Here there was no actual delegation of authority, but only the fiction of a name.

Fite admitted that he considered the duties which he performed during the years of incorporation as broad as those which he had performed as sole proprietor of the theatres and that he exercised the same powers and authority under the contracts as he did as president of the corporations. In the light of these admissions it is difficult to discover any distinct role which he left for himself as officer of the corporations during the existence of the contracts and we conclude, as the Bureau did, that his duties under the contracts in most respects coincided with his duties as corporate officer.

Deposits and disbursements were made to and from separate corporate funds. Payments for utility services, film, and gifts to patrons were made by checks drawn on the corporations' accounts. Such deposits and disbursements could have been handled by Fite and White other than as corporate officers only in direct violation of the express directives of the by-laws. Although Fite claims to have operated the theatres as an independent contractor, none of the employees, including the house managers, ticket sellers, ushers and machine operators, were his employees, but were rather the employees of the corporations. The latter, not Fite, were responsible for salaries, workmen's compensation and the other incidents of the employment relationship. Certainly in hiring these employees to whom the corporations were responsible and in using separate corporate funds for their salaries, for insurance premiums on workmen's compensation and for property insurance, Fite must be deemed to have acted in his corporate capacity.

Fite decided what charitable contributions should be made by the corporations, what depreciation should be taken on their properties, when to repair or remodel the theatres, when and where to borrow money, whether to operate as first-run or second-run theatres, and all other matters of overall policy; these things he claims to have done as an independent contractor and without compensation from the corporations as an officer. Such a scheme would deprive the corporations of the services of responsible officers and defeat many of the major purposes of the adoption of the corporate form. Fite's interest, as president and sole owner, in the succsessful operation of the corporations belies his claimed status as an independent contractor with the attendant possibility of conflicting interests. Apparently he sought to retain all the business advantages of the sole proprietorship, the corporate form and the independent contractor with none of the disadvantages adhering to any of these business units; this he cannot do whether the alleged status is challenged by the taxing authorities or otherwise.

It must be kept in mind that Fite owned all of the stock of the corporations and could dispense profits and alter the method of distribution at will; consequently, it is obvious that the compensation which he received in the form of a percentage of gross receipts was merely a substitute for remuneration as an officer. Prior to the execution of the contracts he drew a salary as an officer. Subsequent to the termination of the contracts he also drew a salary as an officer in substantially the same amount as before. Operations after the contracts expired were identical with those carried on while they were in force. It is apparent that during the taxable years in question the remuneration which Fite, and likewise White, received was for services theretofore and thereafter rendered by them as officers. Nothing more or less was done by them under the contracts than was previously or subsequently done by them as officers.

Despite Fite's desire to claim, for tax purposes, the status of independent contractor, he was unwilling to assume the responsibilities of such status. He retained the same immunity from personal liability and the same right to reimbursement which he had as president and general manager of the corporations. So inconsistent were the two relationships in these cases that the Court must determine which of them in fact existed. In making such determination the motives and true intent of a controlling stockholder and principal officer of a corporation who enters into a contract with the corporation to do no more nor less than he is already empowered to do and under positive duty to do under the by-laws of the corporation must be scrutinized with care. The reasons advanced by Fite for the creation and existence of such an unusual type of contract are not convincing.

Fite testified that his purpose in entering into the contracts was to facilitate the borrowing of money and to give him an advantage in the buying of film. He stated that the banks had previously been willing to make loans to him personally but not to the corporations. If he was considered a good risk by the banks, he could have undoubtedly satisfied their requirements by personally endorsing corporation notes, which appears to be exactly what was done even after the contracts were executed. Moreover, there was never any question of Fite's authority to borrow on behalf of the corporations. Resolutions conferring such authority were adopted and, in any event, Fite was in a position to have the corporations confer such authority upon him as he might desire.

The anticipated advantages in buying film appear at best to have been so highly speculative as to constitute little basis for the execution of the contracts. Although Fite testified that many of the film companies never learned of the existence of the contracts, payment for the films was made by checks of the corporations, and there was no evidence that the film companies understood that the sales were made to Fite in any other than a representative capacity. If the fact that the companies were dealing with corporations was unknown to them, there was no need for the execution of contracts to offset nonexistent states of mind. If the film companies did know that the corporations were buying the film, Fite could have obtained all of the advantages claimed for his operations under the contracts by advising them that he owned all of the corporate stock, was buying jointly for the corporations and would guarantee the accounts. Upon neither hypothesis was the need for contractual denial of the employer-employee relationship demonstrated and the absence of such need was shown by the fact that Fite showed the contracts to none of the film companies.

Fite's desire to obtain, through the contracts, complete freedom of action as far as his relationship with the corporations was concerned, thereby enabling him to buy and book film for other theatres, carries little weight as a reason for the execution of the contracts in view of his admission that he had never felt any restriction on his activities, and in view of the fact that his dominant position in the corporations made it inconceivable that he could have been subject to any control other than that exercised by himself. As a matter of fact, he did not book film for other theatres and the Court is not convinced that his ill health explains the failure to do so.

Careful analysis reveals similar weaknesses in the other reasons advanced by Fite for the execution of the contracts, but the above is illustrative of the type of evidence which this Court is asked to accept as sufficient to overcome the determination of the Bureau of Internal Revenue that Fite's activities under the contracts were indistinguishable from those performed as corporate officer.

Should the courts sanction escape from tax liability under this type of arrangement, the invitation to other corporations to avoid their obligations under the Social Security Act, 42 U.S.C.A. § 301 et seq., by entering into contracts with their officers to perform their corporate duties ostensibly as independent contractors would be patent, and such officers might avoid the deductions prescribed by the law and yet derive the benefits thereof upon reaching the required age. Similar attempts have

been repulsed by the courts. Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Walker v. Altmeyer, 2 Cir., 137 F.2d 531.

In Miami Theatre v. Fahs, S.D.Fla., 66 F.Supp. 124, cited by the taxpayers, the contractual services rendered by the partnership was found by the court to be "of an entirely different nature" from the business of the various corporate entities for which the services were rendered. Certainly the more glaring scheme in this case should not receive judicial approval. The following words of the court in Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 278, 84 L.Ed. 319, seem particularly applicable: "Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed * * *. Taxes cannot be escaped 'by anticipatory arrangements and contracts however skillfully devised * * * by which the fruits are attributed to a different tree from that on which they grew.' Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731." Pertinent also are the following expressions found in Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 358, 84 L.Ed. 406: "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages. On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation."

The case of Fite v. United States, D.C., W.D.Mo., 65 F.Supp. 754, involved another theatre, a separate and distinct corporation from the taxpayers here concerned, and another separate and distinct management and buying contract. That decision cannot be considered as res adjudicata of the issues presented in the cases now before this Court.

In view of the observations noted herein and the conviction of the Court after hearing the evidence and examining the contracts here involved, the Court finds that both W. D. Fite and C. N. White were employees of the plaintiff corporations, and not independent contractors, within the meaning of Title IX of the Social Security Act, 42 U.S.C.A. § 1101 et seq., during the taxable period involved in these actions, and that the taxes paid with respect to their services were properly imposed. Findings of Fact and Conclusions of Law have been filed.