SHAFFER TERMINALS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 26127.   Promulgated February 16, 1951.

*Henry C. Perkins, Esq.*, for the petitioner.
*John D. Picco, Esq.*, for the respondent.

360

## OPINION.

JOHNSON, *Judge:* The issue for determination is whether amounts paid as "rent" by petitioner to a partnership composed of its sole stockholders under certain "Sale and Lease Agreements" are proper deductions in the computation of excess profits tax during the years 1944 and 1945 under section 23 (a) (1) (A)[1] of the Internal Revenue Code.

This issue depends for its determination upon the fundamental question of whether the transaction here involved is a recognizable sale and lease for tax purposes. Considering first the parties to the transaction, we find the lessor partnership composed of the sole stockholders of petitioner, the lessee. Such a situation bears special scrutiny. *Higgins* v. *Smith,* 308 U. S. 473. The president of petitioner was also manager of the partnership. The office of the partnership was the same as that of petitioner. The partnership paid no rent and hired no employees except petitioner's regular bookkeeper. The establishment of policies for both petitioner and the partnership was the responsibility of the same individuals. These circumstances, we believe, do not lend toward arm's length dealing in a transaction recognizable for tax purposes.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition. to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

Petitioner asserts that the partnership was formed for the purpose of acquiring the necessary capital with which to purchase the equipment. This, however, does not impress us in view of petitioner's working capital position at the time of the various purchases which was ample to cover checks drawn on its account. Furthermore, the funds with which the partnership purchased the initial equipment were in the main obtained by bank loans to the partners whose source of repayment was the revenue earned by petitioner. It is also to be noted that the subsequent purchases of equipment by the partnership were financed by bank loans made against chattel mortages and the increased earnings of the partnership which were the rentals paid by petitioner. In actual effect it was the earning power of petitioner which formed the basis for these financial arrangements. And finally, the testimony of E. E. Searles, of the Puget Sound National Bank, although contradictory, is to the effect that petitioner would have been granted a short term loan had it made application.

The mere fact that these payments, made by the corporation to the partnership, were labeled rent does not, in fact, make them so. They may be dividend distributions or something other than rent. *Ingle Coal Corporation* v. *Commissioner* (CA-7, 1949), 174 Fed. (2d) 569; *Limericks, Inc.* v. *Commissioner* (CA-5), 165 Fed. (2d) 483. Nor does the fact that there may have been a legally enforceable obligation to pay, as between petitioner and the partnership, make such payments deductible as rent or otherwise under section 23 (a) (1) (A) of the Internal Revenue Code. *Interstate Transit Lines*, 44 B. T. A. 957, affd., 130 Fed. (2d) 136, affd., 319 U. S. 590; *Deputy* v. *Du Pont*, 308 U. S. 488.

Whether the "Sale and Lease Agreement" which gave rise to the obligation to pay "rent" is such a transaction as is recognizable for tax purposes depends, we think, upon the practical effect of the end result. These various steps were not separate, independent transactions, but integrated parts of a single plan and "in determining tax consequences we must consider the substance rather than the form of the transaction." *Ingle Coal Corporation* v. *Commissioner, supra.*

Petitioner asserts on the authority of *Gregory* v. *Helvering*, 293 U. S. 465, that it is within the right of a taxpayer to decrease the amount of his tax liability by means within the limits of the law. This is no doubt true. However, the principle enunciated in that case, as we understand it, aside from the question of tax avoidance, is whether the transaction under scrutiny is in substance what it purports to be in form.

Here, the partnership, composed of the sole stockholders of petitioner was formed for the purpose of purchasing from it and holding for its exclusive use the equipment required. When not being used by petitioner, but only with its consent, the equipment could be tem-

porarily leased to others. The partnership owned nothing but the equipment purchased from petitioner and simultaneously leased back to it. Equipment Associates employed only a manager, who was also the president of petitioner, and a part time bookkeeper regularly employed by petitioner. By these transactions petitioner, in addition to possessing the exclusive right to lease the equipment, had full control over its use as well and by exercising its first option to purchase the equipment also controlled the partnership's disposition of the equipment.

The net effect of the agreement was to strip the partnership of all incidents of ownership, vesting in it only bare legal title while control over the property remained in petitioner. Such a reservation of control contradicts a sale which presupposes that the seller loses not only title but control. *Esperson* v. *Commissioner* (CA-5), 49 Fed. (2d) 259; *Shoenberg* v. *Commissioner* (CA-8), 77 Fed. (2d) 446. Such command over the property marks petitioner as the real owner for income tax purposes. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331. As the Supreme Court stated in *Higgins* v. *Smith, supra*, pp. 477, 478:

* * * The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property.

Nor does it make any difference that such command "may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency." *Griffiths* v. *Helvering*, 308 U. S. 355.

The artificiality of these transactions is further emphasized when we view the ultimate result. The partnership purchased the required equipment at the initial cost to petitioner of $30,147.65. From October 1943, until February 1947, petitioner paid rent to the partnership in the amount of $90,144.10. On April 23, 1946, the partnership sold six pieces of this equipment back to petitioner at the depreciated book value of $10,613.49, plus sales tax of $318.40. The remaining pieces of equipment were distributed to the partners upon the dissolution of the partnership on June 30, 1947, and were sold to petitioner on October 27, 1947, for $7,500. The total sum paid by petitioner to the partnership for the use and subsequent purchase of equipment initially costing $30,147.65 was $108,575.99. The "rental" paid by petitioner comprised the total amount of the partnership earnings, except for a small sum received in rent from others than petitioner,

from which the distribution of partnership profits was made to the partners. Petitioner paid no dividends in the years 1943 to 1945, inclusive.

Upon close scrutiny, this entire plan is not, in substance, a sale and lease transaction recognizable for tax purposes and we therefore hold that the amounts paid the partnership by petitioner are not deductible as rent under section 23 (a) (1) (A) of the Code.

The facts in the instant case present an even stronger case for respondent than those presented in a similar sale and lease transaction considered in *Catherine G. Armston*, 12 T. C. 539. There, a family corporation sold certain construction equipment to its major stockholder, the taxpayer, who in turn leased it back to the corporation, which paid rent for the use of the equipment. This Court held that this did not constitute a recognizable sale creating a valid obligation to pay rent. There the lessor possessed control over the use of the equipment and full right of sale, whereas in the case before us no such right existed.

*Skemp* v. *Commissioner* (CA-7, 1948), 168 Fed. (2d) 598, reversing 8 T. C. 415, is distinguishable from the instant case on the facts. There, ownership and control were relinquished by the donor by irrevocably divesting himself of all title and right to the property upon conveying it to an independent trustee over which the donor had no control. On these facts, the Court of Appeals held that a bona fide lease existed.

Petitioner cites *Buffalo Meter Co.*, 10 T. C. 83, and *Seminole Flavor Co.*, 4 T. C. 1215, which are not applicable here. In those cases there was an actual and real separation of economic interests between two independent business entities, not the creation of a subservient agency from which independence and control has been stripped as in the case before us.

*Decision will be entered for the respondent.*