**Oscar F. ERICKSON and Aminta K. Erickson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. P–2261.**

United States District Court
S. D. Illinois, N. D.

Aug. 12, 1960.

MERCER, Chief Judge.

This is a suit by Oscar F. Erickson, hereinafter referred to as plaintiff or taxpayer against the United States of America, for a refund of a $28,503.84 alleged overpayment of income tax for the taxable year 1955.[1]

The evidentiary facts of the controversy are largely stipulated. The following summary of the stipulation is to be considered as a part of the court's findings of fact, in conjunction with the express findings of fact hereinafter set forth.

For the calendar year 1955, taxpayer filed his Federal Income Tax Return and paid the tax shown due thereon in the amount of $10,584.32. By a so-called "90 Day Letter" dated December 29, 1958, the Commissioner of Internal Revenue determined a deficiency in the amount of $24,335.06 in income tax due from taxpayer for the taxable year 1955. That determination was based upon the disallowance of automobile expense claimed upon taxpayer's 1955 income tax return in the amount of $322.72, and upon the assessment by the Commissioner of $43,-246.78 additional and unreported dividend income of taxpayer for that taxable year.

Thereafter, a deficiency assessment was levied against taxpayer in the amount of $28,693.70, which included interest in the amount of $4,358.64. Taxpayer paid the deficiency assessment and, on May 13, 1959, filed his claim for refund of $28,503.84 of the amounts so paid. In his claim for refund, taxpayer accepted the determination of the disallowance of car expenses as correct, but he denied that he had received a dividend or other income in 1955 which was not reported on his 1955 tax return.

Taxpayer's claim was disallowed on July 27, 1959. He filed his suit on September 24, 1959, praying judgment

Robert H. Miller, Davis, Morgan & Witherell, Peoria, Ill., for plaintiff.

Harlington Wood, Jr., U. S. Atty., Springfield, Ill., William F. Kolbe, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

1. Aminta K. Erickson, wife of taxpayer and a party plaintiff in this suit, passed away after the case was heard. The moneys involved in this suit were the property of taxpayer. His wife, joined in the suit as a party plaintiff only because she and taxpayer had filed a joint Federal Income Tax Return for 1955. The cause now proceeds as the suit of Oscar F. Erickson, alone.

against the defendant in the amount of $28,503.84, with statutory interest.

The Commissioner's determination that taxpayer had received dividend income for 1955 which had not been reported on his tax return grew out of the redemption by Fred Harbers' Sons, Inc., a Delaware corporation, of 359 shares of its outstanding stock.

For a number of years, prior to 1950, William S. Harbers, Emil A. Harbers and Gordon H. Belsterling were engaged as copartners in the general construction contracting business as Fred Harbers' Sons. Taxpayer and Richard G. Belsterling were, on and prior to May 1, 1950, supervisory employees of the partnership. The respective ages of the above persons, on the latter date, were William G. Harbers, 72; Emil A. Harbers, 70; Gordon H. Belsterling, 66; taxpayer, 55; and Richard G. Belsterling, 36.

The partners then desired to retire from the active management of the business and to enable taxpayer and Richard Belsterling to obtain major ownership and primary risk thereof. To accomplish that purpose Fred Harbers' Sons, Inc., was incorporated under the laws of Delaware on May 1, 1950, with initial capital of $75,000, represented by 750 $100 par shares. The respective share subscriptions of the group were as follows:

| | |
|---|---|
| William G. Harbers | 57 shares |
| Emil A. Harbers | 57 shares |
| Gordon H. Belsterling | 58 shares |
| Richard G. Belsterling | 352 shares |
| Taxpayer | 226 shares |

On May 13, 1950, all of the shareholders entered into a joint option agreement whereby it was mutually agreed that neither of them would offer his shares in the corporation for sale to any person other than the named shareholders without first giving to each of the other shareholders a 30-day option to purchase such shares at the then existing book value thereof.

In October 1950, Emil A. Harbers died. His 57 shares were purchased for cash from his executors by taxpayer and Richard G. Belsterling, taxpayer receiving 29 shares thereof and Belsterling the remaining 28. From 1950 to 1954, the capital of the corporation was increased from time to time through the issuance of additional $100.00 par-shares which were purchased by taxpayer and Richard G. Belsterling. In January 1954, there were 950 shares of the corporation issued and outstanding, as follows:

| | |
|---|---|
| Richard G. Belsterling | 491 shares |
| Taxpayer | 344 shares |
| William G. Harbers | 57 shares |
| Gordon H. Belsterling | 58 shares |

At that time Richard G. Belsterling's holdings approximated 52% of the outstanding shares. Taxpayer's holdings were approximately 36% thereof.

On January 31, 1954, Richard G. Belsterling died. As of that date, the shareholders all agreed that the book value of the shares was $189.57 per share, making the value of the 491 shares held by the Richard G. Belsterling estate $93,078.87. On March 16, 1954, taxpayer paid $25,078.87 to the executors of the estate by his check. On the same date, William G. Harbers paid $68,000 to the executors, and the executors endorsed to taxpayer and delivered to him stock certificates representing the aggregate of 491 shares of the corporation.

Taxpayer surrendered the endorsed certificates to the corporation and, on March 16, 1954, certificate No. 12 was issued by the corporation in taxpayer's name, representing 491 shares. On March 17, 1954, taxpayer executed and delivered to William G. Harbers his 10 year installment note payable to Mr. Harbers in the amount of $68,000. Contemporaneously therewith, taxpayer endorsed and delivered the certificate to an escrow agent as security for the $68,000 note, pursuant to an agreement executed March 17, 1954, by taxpayer and Mr. Harbers.

In 1953, Fred Harbers' Sons, Inc., had been awarded the contract to construct a new YMCA building at Peoria, Illinois, at a contract price of $1,445,750. That contract required a performance bond in the amount of the contract price, and

provided for progress payments to the corporation as the project progressed. By July 1955, the YMCA contract was essentially performed, and the corporation had received some 88% of the contract price in progress payments.

On July 21, 1955, a series of events took place in chronological sequence as follows: the escrow agent surrendered to the corporation the blank-endorsed certificate for the 491 shares of its stock; certificates No. 13 and 14 were then issued to taxpayer, representing respectively, 359 shares and 132 shares of the corporation's stock; taxpayer surrendered certificate No. 13 for transfer and the corporation issued certificate No. 15 to William G. Harbers for 359 shares; upon the delivery to him of certificate No. 15, Mr. Harbers cancelled and returned to taxpayer the $68,000 note and the escrow arrangement was terminated; all of the stockholders of the corporation then entered into a written consent to reduction of capital which provided for the purchase for retirement of the 416 shares of stock held by William G. Harbers; and thereafter, Mr. Harbers delivered certificates representing the 416 shares to the corporation and the corporation delivered to him its check in the amount of $77,437.49, as payment thereof. Of that sum, $68,000 was payment for the 57 shares which Mr. Harbers had held since organization of the corporation. The latter figure was computed on the basis of an agreed share value of $165.57 per share as of June 30, 1955. $41,600 of the $77,437.49 was charged to a reduction of the corpora-

tion's capital. The balance of the sum paid on redemption of the 416 shares of stock was charged against earned surplus of the corporation, and the stock redemption transaction was financed in part by $50,000 borrowed by the corporation from a Peoria bank on July 19, 1955.

In the year 1955, taxpayer paid to Mr. Harbers the sum of $3,400 in interest, the same being interest computed at the rate of 4% per annum on his personal note to William G. Harbers in the sum of $68,000. Mr. Harbers reported the receipt of that interest payment on his 1955 income tax return.

Upon the facts as above summarized, the Commissioner determined and the government now contends, that the redemption through Mr. Harbers of the 359 shares which taxpayer had owned, with the concomitant cancellation of the $68,000 personal note, resulted in a payment to taxpayer which was essentially equivalent to a corporate dividend and is taxable to taxpayer under Section 301 (c) of the Internal Revenue Code of 1954, 26 U.S.C. § 301(c), 1954 Ed. in accordance with the provisions of Section 302 (d) thereof, 26 U.S.C. § 302(d), 1954 Ed.

As applicable to this case, the cited sections provide that a distribution of property by a corporation in redemption of stock is to be taxed as dividend income under Section 301(c), with reference to Section 316 of the Code, 26 U.S.C. § 316, 1954 Ed., unless such distribution falls within one of the exclusions provided in Section 302(b).[2]

2. In pertinent part, the Internal Revenue Code of 1954 provides:

"§ 301. Distribution of property

"(a) In general.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

\* \* \* \* \*

"(c) Amount taxable.—In the case of a distribution to which subsection (a) applies—

"(1) Amount constituting dividend.— That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

"(2) Amount applied against basis.— That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock. \* \* \*" 26 U.S.C. § 301, 1954 Ed.

"302. Distribution in redemption of stock

"(a) General Rule.—If a corporation redeems its stock (within the meaning

Taxpayer, on the other hand, predicated his complaint upon a theory of constructive agency. Thus, taxpayer alleges that in 1954, all of the shareholders of the corporation desired to redeem the Richard Belsterling stock at its then aggregate book value of $93,078.87, but that the corporation, because of its cash and credit commitments on the YMCA construction contract, was not in a position to then redeem the stock. It is then alleged that none of the interested parties in the corporation intended that taxpayer should retain the 359 shares represented by his $68,000 note to William G. Harbers; and that taxpayer acted as a conduit for the corporation only, in order to facilitate the anticipated redemption of said shares, with the result that no personal income accrued to taxpayer in the transaction.

Upon the stipulation of the parties and the evidence adduced in open court, the court finds the facts in the cause in suit as follows:

1. The court has jurisdiction of the parties of this cause and the subject matter in litigation.

2. Taxpayer, in the transactions relating to the 359 shares of stock derived from the Richard Belsterling estate which were ultimately redeemed through William Harbers, acted as the principal party in interest and not as the agent for Fred Harbers' Sons, Inc.; the transaction embodied in the delivery of taxpayer's promissory note to Mr. Harbers, in the escrow agreement executed by taxpayer and Mr. Harbers, and in subsequent transactions and events leading to redemption of the stock are all inconsistent with any inference that plaintiff acted in the transaction as the agent for his corporation. This was a transaction between private individuals for taxpayer's private interest in which the corporation had no interest.

3. Immediately prior to the stock redemption on July 21, 1955, taxpayer was the owner of 835 of 950 shares of the corporation then outstanding, or approximately 88% of the shares of that corporation. After completion of the stock redemption transaction, taxpayer was the owner of 476 of 534 outstanding shares of the corporation, or approximately 89% of such outstanding shares.

4. The practical effect of the transaction in which the 359 shares derived from the Richard Belsterling estate were redeemed, was that Fred Harbers' Sons, Inc., paid a $68,000 obligation for plaintiff. Taxpayer occupied a dominant position in the capital control of the corpora-

of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

"(b) Redemptions treated as exchanges.—

"(1) Redemptions not equivalent to dividends.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

   \*    \*    \*    \*    \*

"(d) Redemptions treated as distributions of property.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies." 26 U.S.C. § 302, 1954 Ed.

"§ 316. Dividend defined

"(a) General rule.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

"(1). out of its earnings and profits accumulated after February 28, 1913, or

"(2). out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

"Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection, \* \*" 26 U.S.C. § 316, 1954 Ed.

tion, which position was strengthened by the stock redemption transaction.

5. To the extent that the $68,000 price for redemption of the 359 shares was paid from earnings of the corporation and from earned surplus, that payment was essentially equivalent to the payment to plaintiff of a dividend by the corporation.

6. No contraction of corporate business and activities resulted from the reduction of capital effected on July 21, 1955.

Upon the facts as found, the court draws its conclusions of law as follows:

1. Under the circumstances surrounding the stock redemption on July 21, 1955, taxpayer received from his corporation a payment which was essentially equivalent to a dividend and taxable under the provisions of section 301(c) of the Internal Revenue Code of 1954, 26 U.S.C. § 301(c), 1954 Ed. with reference to section 316 of the code, 26 U.S.C. § 316., 1954 Ed. Lowenthal v. Commissioner, 7 Cir., 169 F.2d 694; Ferro v. Commissioner, 3 Cir., 242 F.2d 838; Woodworth v. Commissioner, 6 Cir., 218 F.2d 719; Wall v. United States, 4 Cir., 164 F.2d 462. Compare Fox v. Harrison, 7 Cir., 145 F.2d 521.

2. The legal effect of the passage of the 359 shares through Mr. Harbers to the corporation and the payment to Mr. Harbers of $68,000.00, whereby taxpayer's $68,000 note was paid and cancelled, is precisely the same as if taxpayer had directly transferred the shares to the corporation and received therefor the sum of $68,000.00. Ferro v. Commissioner, 3 Cir., 242 F.2d 838; Wall v. United States, 4 Cir., 164 F.2d 462. A payment to one party cannot be changed into a payment to another merely by using that other as conduit through whom title will pass. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Griffiths v. Helvering, 308 U.S. 355, 60 S. Ct. 277, 84 L.Ed. 319. The transfer of the 359 shares through Mr. Harbers, and the corporations' payment of tax-

payer's debt to Mr. Harbers is the same for tax purposes as though the corporation had made the payment directly to taxpayer and taxpayer had, thereafter, paid the $68,000 note.

3. The Commissioner properly determined that taxpayer derived taxable income out of the stock redemption transaction of July 21, 1955, within the meaning of Section 301(c) of the Code, with reference to Section 316 of the Code.

4. Taxpayer has failed to sustain the burden of proving the allegations of his complaint and judgment will be entered in favor of defendant, dismissing the complaint.

Judgment is accordingly entered in favor of defendant dismissing taxpayer's complaint, taxpayer to pay the costs of the litigation.

