Arthur L. **CHRISTOFFERSEN** and Theresa A. **Christoffersen**, Appellees,

v.

**UNITED STATES** of America, Appellant.

No. 84–1420.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1984.

Decided Dec. 5, 1984.

Rehearing and Rehearing En Banc Denied Jan. 3, 1985.

**514**

Elaine Ferris, San Francisco, Cal., for appellant.

Arthur S. Rollin, Chicago, Ill., for appellees.

Before LAY, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

The issue presented on this appeal is whether the Pacific Variable Annuity Contract, purchased by the taxpayers Arthur L. and Theresa A. Christoffersen in 1981, is an annuity consistent with 26 U.S.C. § 801(g) (1976) and qualifies for deferred tax treatment under 26 U.S.C. § 72 (1976).[1] The district court, the Honorable Edward J. McManus presiding, entered judgment in favor of the taxpayer, 578 F.Supp. 398, and the government has appealed. We vacate the judgment of the district court and remand with directions to enter judgment in favor of the government.

The Christoffersens purchased the Pacific Varible Annuity Contract from Pacific Fidelity Life Insurance Company for $50,-000. The Contract gave the Christoffersens the right, in the year 2021, to purchase an annuity based on 1981 mortality tables.[2] The bulk of the $50,000 was invested, at plaintiffs' direction, in the Fidelity Daily Income Trust, a mutual fund which invested in high-grade, short-term money market instruments.[3] The Trust generated $1,532 of income in 1981 which taxpayer directed to be reinvested in the Trust. The Christoffersens reported it on their joint 1981 tax return. Plaintiffs immediately filed an amended return and claimed a refund of the $647 tax resulting from the inclusion of that income. The refund claim was denied by the IRS and the Christoffersens filed this complaint in the United States District Court for the Northern District of Iowa.

The district court relied upon *Investment Annuity, Inc. v. Blumenthal,* 442 F.Supp. 681 (D.D.C.1977), *rev'd on procedural grounds,* 609 F.2d 1 (D.C.Cir.1979), *cert. denied,* 446 U.S. 981, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980), to conclude, as a matter of law, that plaintiffs' contract was a variable annuity and qualified for deferred tax treatment under section 72(e). For reasons discussed, we cannot endorse the approach of the district court in the *Investment Annuity* case.[4]

---

**1.** 26 U.S.C. § 72 was amended by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324. However, because this case involves tax year 1981, we deal with the statute effective in 1981.

**2.** Historically, the mortality tables have risen as medical science increases life expectancy. It is likely that the tables in 2021 will be less beneficial to the annuitant than the 1981 tables. There is, however, the possibility that life expectancy might decrease. With an option-type contract such as we have here, the investor is able to obtain the most favorable rates of return by selecting either the 1981 tables or the current tables in 2021. The profit for the insurance company lies in the premium paid for the contract and the possibility that the investor will not live long enough to exercise it.

**3.** Pacific Fidelity retained $3.79 for administrative expenses and $84.02 as the annuity option premium.

**4.** The United States District Court for the District of Columbia based its holding on a factual finding that the insurance company, and not the policyholder, was the owner of the assets in the annuity sub-account. *Investment Annuity,* 442 F.Supp. at 688–91.

■ The Pacific Variable Annuity Contract is an investment program which includes a contract for the purchase of an annuity. However, investors need never exercise the annuity feature of the contract. This form of contract is called a "wrap around annuity." [5] The purchaser of the Contract selects which of the mutual funds offered by Pacific Fidelity to invest in and can change to another fund at any time. The investor bears the full investment risk and may withdraw any or all of his investment upon seven days notice. Pacific Fidelity holds the investor's mutual fund shares in a sub-account of its Separate Account. The taxpayer, in purchasing the Contract, did not become obligated to purchase an annuity. The only difference between Pacific Fidelity's arrangement and that of a traditional brokerage firm is the fact that the investor is limited to withdrawing cash. While a broker would re-register shares from its street name into the investor's name upon demand, Pacific Fidelity will sell off the shares it holds for the investor and transfer the cash value.

The district court's reliance on section 801(g) is misplaced.[6] The court reasoned that the taxpayer's Contract with Pacific Fidelity was an annuity pursuant to section 801(g) qualifying for deferred treatments under section 72.[7] Section 801(g), which does not apply to individual taxpayers, defines variable annuities and allows them to be treated as other annuities for life insurance company taxation purposes. Unless Pacific Fidelity is found to be the beneficial owner of the assets held in the sub-account, section 801(g) is not relevant to this case. Section 72, on the other hand, relates to income received under an annuity. The Christoffersens do not argue that the monies received by the Trust are funds received under an annuity. The annuity does not start until the year 2021 and then only if taxpayer elects to exercise his contract at that time.

Although Pacific Fidelity maintains the shares in its name, the Christoffersens are the beneficial owners of the investment funds held in their Pacific Fidelity account. As stated by the Supreme Court in *Griffiths v. Commissioner*, 308 U.S. 355, 357–58, 60 S.Ct. 277, 278, 84 L.Ed. 319 (1939):

> We cannot too often reiterate that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss v. Bowers*, 281 U.S. 376, 378 [50 S.Ct. 336, 74 L.Ed. 916]. And it makes no difference that such "command" may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency.

The Christoffersens have surrendered few of the rights of ownership or control over the assets of the sub-account. *Compare Helvering v. Clifford*, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940). The pay-

---

5. The name comes from the fact other investment assets such as stocks, bonds or mutual funds are wrapped in an annuity in the hope that earnings from such investments will not be taxable to the taxpayer in the same manner as if the taxpayer purchased the assets directly. *See* Appleman, Insurance Law and Practice § 81 n. 5 (1981).

6. 26 U.S.C. § 801 (1976):
  **(g) Contracts with reserves based on segregated asset accounts**
    **(1) Definitions**
    **(A) Annuity Contracts include variable annuity contracts**
    For purposes of this part, an "annuity contract" includes a contract which provides for the payment of a variable annuity computed on the basis of recognized mortality tables and the investment experience of the company issuing the contract.

7. 26 U.S.C. § 72 (1976):
  **(e) Amounts not received as annuities.**
    **(1) General Rule**
    If any amount is received under an annuity, * * * if such amount is not received as an annuity, * * * then such amount—
      *    *    *    *    *    *
    **(B)** * * * shall be included in gross income, but only to the extent that it (when added to amounts previously received under the contract which were excludable from gross income under this subtitle or prior income tax laws) exceeds the aggregate premiums or other consideration paid.

ment of annuity premiums, management fees and the limitation of withdrawals to cash, rather than shares, do not reflect a lack of ownership or control. Similar requirements may be placed on traditional brokerage or management accounts. In addition, the possibility that the assets will be converted into an annuity in 2021 does not significantly impair the Christoffersens' ownership since all, or any portion, of the assets may be withdrawn before that time. Upon examination of the Contract as a whole, we must conclude that the Christoffersens, and not Pacific Fidelity, own the assets of the sub-account.

■ Moreover, despite the fact that the dividends were held in the sub-account and not distributed to the Christoffersens, we hold that the dividends are income received. The Christoffersens have access to all of the assets in the account at any time. The fact that the Christoffersens chose to reinvest, rather than withdraw, the income from the assets of the account should not affect their tax liability. Under the long recognized doctrine of constructive receipt,[8] the income generated by the account assets should be taxed to the plaintiffs in the year earned, not at some later time when the Christoffersens choose to receive it. This is the essence of Rev.Rul. 81–225, which we find persuasive.

Because the dividends were not received under any annuity, section 72(e) is not applicable to taxpayers. The dividends must be included in gross income. We agree with the government's argument that taxpayers' so-called variable annuity provides them with a tax deferral basis similar to an IRA without the substantial restrictions imposed by Congress on IRAs. *See* section 408(f)(1). Therefore, the judgment of the district court is reversed and remanded with directions to enter judgment in favor of the United States. Judgment reversed.

8. Treas.Reg. § 1.451–2(a):

  (a) *General Rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *
26 C.F.R. § 1.451–2(a) (1984).