## GRIFFITHS v. COMMISSIONER OF INTERNAL REVENUE.

No. 49. Argued December 5, 1939.—Decided December 18, 1939.

*Mr. Herman A. Fischer,* with whom *Mr. Delbert A. Clithero* was on the brief, for petitioner.

*Mr. Arnold Raum,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Messrs. Sewall Key, J. Louis Monarch,* and *Joseph M. Jones* were on the brief, for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The case is here to review a decision of the Circuit Court of Appeals for the Seventh Circuit, 103 F. 2d 110,

[8] Cf. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64.

reversing an order of the Board of Tax Appeals, 37. B. T. A. 314, which had overruled a deficiency assessment by the Commissioner of Internal Revenue in petitioner's income tax return for 1933. We granted *certiorari, post,* p. 531, because of an alleged conflict between the decision below and that of the Circuit Court of Appeals for the Second Circuit in *Smith* v. *Higgins,* 102 F. 2d 456; *post,* p. 473.

The facts are undisputed, and, for purposes of our decision, may be thus abridged: In 1926 Griffiths, the petitioner, paid one Lay $100,000 for some stock. The investment was unprofitable, and the upshot of a complicated series of transactions was allowance to Griffiths by the Commissioner of a deductible loss of $92,500 for the year 1931 resulting from a sale of the stock by Griffiths to a family corporation. Thereafter, in 1932, Griffiths got wind of the fact that Lay had defrauded him in the 1926 sale. Negotiations were begun for a settlement of Griffiths' claim against Lay, and by January 1933, Griffiths' lawyer had devised an arrangement for such a settlement. The gist of the arrangement was this: Griffiths was to re-acquire the shares, convey them to a corporation newly created for the purpose of furthering the scheme and wholly controlled by Griffiths, which in turn was to transfer the stock back to Lay for $100,000 to be paid by him, and that sum was to be paid over by the corporation to Griffiths in annual installments for forty years, with interest on the deferred payments.[1] The

---

[1] Of the total sum paid, $15,000 was to be applied by the corporation in payment of a personal indebtedness owed by Griffiths. This sum, of course, was clearly income to petitioner. The remainder was to be paid in installments by the corporation to Griffiths. Petitioner contends that these installments alone are taxable to him as they are paid, under the provisions of § 44 of the Revenue Act of 1932, c. 209, 47 Stat. 169.

essentials of this scheme were carried out. Its purpose—to disguise by intervening elaborations what in fact was a rescission of the original purchase by Griffiths for $100,000—was made more manifest by these facts: Griffiths personally re-acquired and transferred the shares to Lay without revealing the existence of the new corporation, gave Lay a personal release of all claims against him, and personally received from Lay the $100,000 which he then turned over to the corporation.

On these findings the Commissioner ruled that Griffiths, having been allowed a deduction for loss attributable to the stock purchased from Lay and having now recouped that loss through settlement of his claim against Lay, was subject to tax for the amount of the settlement in 1933. We think the Commissioner was right, and that the Circuit Court of Appeals properly reversed the Board of Tax Appeals.

The facts leave little scope for legal explication. Griffiths had a claim for fraud against Lay which, when satisfied, wiped out the loss for which he had received an earlier deduction. Had satisfaction of the claim come to him without any conduit, it would have indisputably been his income. The claim having been recognized by Lay and cast into a form realizable by Griffiths, a lawyer's ingenuity devised a technically elegant arrangement whereby an intricate outward appearance was given to the simple sale from Griffiths to Lay and the passage of money from Lay to Griffiths. That was the crux of the business to Griffiths, and that is the crux of the business to us.

We cannot too often reiterate that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers,* 281 U. S. 376, 378. And it makes no difference that such

"command" may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. Cf. *Gregory* v. *Helvering*, 293 U. S. 465. "A given result at the end of a straight path," this Court said in *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609, 613, "is not made a different result because reached by following a devious path." Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed, particularly in the provisions of a tax law like those governing installment sales in § 44 of the Revenue Act of 1932. Taxes cannot be escaped "by anticipatory arrangements and contracts however skilfully devised . . . by which the fruits are attributed to a different tree from that on which they grew." *Lucas* v. *Earl*, 281 U. S. 111, 115. What Lay gave, Griffiths in reality got, and on that he must be taxed.

The judgment is

*Affirmed.*