**H. O. WILLIAMS and Mrs. Ada L. Williams, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 15212.

United States Court of Appeals, Fifth Circuit.

Feb. 11, 1955.

Thomas Y. Minniece and Maurice F. Kahlmus, Meridian, Miss., for appellants.

Robert B. Ross, Ellis N. Slack, Grant W. Wiprud, Sp. Assts. to Atty. Gen., Dept. of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Edwin R. Holmes, Jr., Asst. U. S. Atty., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for the refund of income taxes for the year 1947, which the plaintiffs alleged had been overpaid by them.

The claim was that plaintiffs had correctly reported on the installment basis, as provided in Sec. 44(b), I.R.C.,[1] the capital gain received from a timber sale in 1947, and the commissioner had incorrectly required the whole of the gain to be included as income in that year.

The answer, admitting the assessment and payment of the deficiency, denied that plaintiffs were entitled to report the gain in installments and that the assessment and collection were wrongful.

Tried to the district judge on evidence[2] furnished entirely by taxpayer and presenting no conflict, the judge, finding and concluding that in fact and in

---

1. "(b) Sales of realty and casual sales of personality. In the case (1) of a casual sale or other casual disposition of personal property * * * for a price exceeding $1000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price * * *, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. *As used in this section the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.*" 26 U.S.C. § 44(b). (Emphasis supplied.)

2. The facts material to this appeal, as found by the District Court and as revealed by taxpayer's evidence may be summarized as follows:

In 1947 taxpayer let it be known that he was willing to sell the timber on some land he then owned, without indicating what terms he would accept. He received bids from several interested parties, the highest being a bid of $60,550 from the C. Blankinship Lumber Company, Inc. (hereafter referred to as the lumber company). Taxpayer was willing to sell the timber to the lumber company for $60,550, and the lumber company desired and was ready and able to make immediate payment in full of that sum; but taxpayer declined to accept immediate payment in full, and arranged with the company that $48,440 of the purchase price be put in escrow with a bank for disbursement to taxpayer in four annual installments. His purpose in doing this was to save federal taxes by reporting as income in each of the five years beginning with 1947 one-fifth of the purchase price.

To effectuate his purpose, taxpayer had a form of escrow agreement prepared, naming as escrow agent the Citizens National Bank of Meridian and secured the Bank's approval of the arrangement. No representative of the lumber company was involved in these preliminaries. On Nov. 19, 1947, taxpayer and Mr. Blankinship of the lumber company appeared together in the offices of the president of the Bank with the escrow agreement and timber deed. Mr. Blankinship delivered to the Bank's president a cashier's check for $48,440, and the escrow agreement was executed and left with the Bank, the timber deed being delivered to Mr. Blankinship. At the same time taxpayer received the lumber company's check for $12,110 as the down payment on the timber. The Bank received no instructions, written or oral, other than those contained in the escrow agreement. There was no subsequent modification of the agreement.

The sole obligation imposed on the Bank by the escrow agreement was to make unconditional disbursement of the $48,440 in four annual installments on specified dates, such disbursement being "irrevocably" directed by the lumber com-

law,[3] the entire purchase price of $60,-550 was available to and received by plaintiffs in the year 1947, and no refund was due them, dismissed the complaint with prejudice, and plaintiffs have appealed.

Stating, "The evidence in the case is undisputed and appellants believe that the legal effect of the so-called escrow agreement governs this case entirely", appellants, quoting from Treasury Regulation 111, Sec. 29.42–2[4] and citing many cases[5] in support of their position, are here insisting that they "have no quarrel with the district judge's findings of fact" but that he erred, in "holding

pany. The timber deed, incorporated by reference in the escrow agreement, provided that "Grantee is accorded the full right to cut the timber hereinabove conveyed and to sell the same regardless of whether the deferred payments above mentioned have actually been paid to grantor or not".

The terms of the escrow agreement and the timber deed were carried out in all respects, the sums agreed to be paid being duly paid by the Bank to taxpayer in accordance with the escrow agreement, and the timber being removed from the land by the lumber company within the specified time.

The Bank was a solvent institution at all times in question, having enjoyed many years of uninterrupted service. While not a negotiable paper, the escrow agreement was assignable, providing in terms that the Bank should make the annual payments to taxpayer, "his heirs, executors, administrators and/or assigns"; and it had a real value of $48,440 less a discount for cash.

3. "The court concludes as a matter of law that the taxpayer had constructive receipt of the entire $60,550.00 of the purchase price in the year 1947, and that in effect and in law this amount of income was received during the year 1947, for taxable purposes.

"The taxpayer had the option of receiving the full purchase price and at the time that he received the $12,110.00 it was within his power and control to have received the balance of $48,440.00 in cash, but having elected himself not to receive it in cash, but to deliver it to the Bank under the escrow agreement, he thereby simply designated the Bank as his agent, making this a receipt by him of the rest of that amount of cash. The sale was completed, and the purchaser from the taxpayer had done all that was required to be done; and the taxpayer, in executing and delivering the deed, did all he was required to do. The Bank owed no further duty to the purchaser of the timber, and if the Bank on the next day had delivered to the taxpayer the amount of $48,440.00, it would have violated no duty to the purchaser, and the taxpayer, himself, could not have complained. As

a matter of law, the entire transaction and the control of the money was in the hands of the taxpayer. In law this amounted to constructive receipt of that amount of money. The full purchase price had been paid by the purchaser for the benefit of the seller. See the case of Kuehner v. Commissioner of Internal Revenue, 20 T.C. 124 [p. 875], decided July 31, 1953; Hineman v. Brodrick [D.C.], 99 F.Supp. 582 is another applicable authority.

"The court concludes as a matter of law that the escrow agreement, itself was assignable and had a value in and of itself, received by the taxpayer in 1947, and was of the approximate value of $48,440.00."

4. Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939:

"Sec. 29.42–2. Income Not Reduced to Possession.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. * * "

5. Loose v. U. S., 8 Cir., 74 F.2d 147; McEuen v. Commissioner, 5 Cir., 196 F.2d 127; Ross v. Commissioner, 1 Cir., 169 F. 2d 483, 7 A.L.R.2d 719; Hyland v. Commissioner, 2 Cir., 175 F.2d 422; Weil v. Commissioner, 2 Cir., 173 F.2d 805; Stoner v. Commissioner, 3 Cir., 79 F.2d 75; Commissioner of Internal Revenue v. Tyler, 3 Cir., 72 F.2d 950; Freeman v. U. S., 3 Cir., 71 F.2d 969; Richards' Estate v. Commissioner, 2 Cir., 150 F.2d 837, 160 A.L.R. 1186; Charlotte Union Bus Station v. Commissioner, 4 Cir., 209 F.2d 586; United States v. Maryland Jockey Club, 4 Cir., 210 F.2d 367; Nitterhouse v. United States, 3 Cir., 207 F. 2d 618.

that they constructively received the full purchase price of timber in 1947", and, in dismissing their suit on the basis of that holding. Pointing out that under the statutes, the regulations, and the decisions, the determinative fact in cases of constructive receipt is that, brought within the control and disposition of taxpayer, the income is available to him that it may be drawn upon by him without substantial limitation or restriction at any time, they insist that the provisions of the escrow agreement preclude the finding and conclusion of the district judge that the escrowed portions of the purchase price were in 1947 constructively available to them.

Appellee, citing many cases,[6] points to the undisputed facts: that the purchaser was not only ready to pay, but desirous of paying, the entire purchase price in cash; and that the escrow was invented by appellants and employed by them not as a part of an installment sale but as a device to reduce the taxes which were due on the cash sale.

In support it quotes Williams' own testimony,[7] as showing beyond dispute: that, after its bid was accepted, the Lumber Company desired and offered to pay the full purchase price in cash without any limitation of restriction of any kind; that, accepting and taking full advantage of the offer, Williams, of his own volition, devised the escrow agreement and in and by it imposed upon himself limitations binding him, as to stated amounts and for stated periods, not to take within his control and disposition and make fully available to himself the full purchase price which, except for the self imposed limitations, would have been fully and completely his to do as he pleased.

In reply to these arguments and authorities, the appellants, insisting that what and all that the United States is endeavoring to do is, when one method of doing business will produce less and another more taxes, to require the taxpayer to take the course which will produce the most taxes, cites as directly opposed Jones v. Grinnell, 10 Cir., 179 F.2d 873 and Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 267, 79 L.Ed. 596, where the Supreme Court said:

"The legal right of a taxpayer to decrease the amount of what other-

6. Holden v. Commissioner, 6 B.T.A. 605;. Corliss v. Bowers, 281 U.S. 376, 50 S. Ct. 336, 74 L.Ed. 916; Hineman v. Broderick, D.C., 99 F.Supp. 582; Kuehner v. Commissioner, 20 T.C. 875, affirmed, 1 Cir., 214 F.2d 437; Oberwinder v. Commissioner, 8 Cir., 147 F.2d 255; Sproull v. Commissioner, 16 T.C. 244, affirmed 6 Cir., 194 F.2d 541; U. S. v. Pfister, 8 Cir., 205 F.2d 538; Sec. 42 of the Internal Revenue Code of 1939, 26 U.S.C. 1952 ed. § 42.

7. Williams, the taxpayer, after testifying fully on direct examination about the escrow and the disposing of 4/5 of the purchase price under it, and on cross examination, that he had let it be known that he was willing to sell the timber by receiving bids on it, and that Blankinship was the high bidder at $60,550, and he had sold it at that price, in answer to questions on cross and recross examination, give the following testimony:

"(TR p. 54) Q. Is it not correct, Mr. Williams, that the putting up of $48,440 in this escrow agreement and having it held by the bank was done at your request? A. Yes, Sir. Well it is an agreement we reached between us. We decided to divide it and let it go in forties, and this suited Mr. Blankenship better.

"Q. At your request the escrow agreement was drawn up and the money placed in the bank? A. Yes, Sir. I wanted the money somewhere.

"Q. He wanted to pay for the whole thing at one time? A. Yes, Sir.

"Q. If he told you he wanted to pay the whole $60,550, it was then at your request that the escrow agreement was drawn up and the money was paid in the bank and paid to you in four installments later on? A. Yes, that is right.

"(TR p. 55) Q. Isn't it true that the only reason you wanted that done was because you thought you probably could save federal taxes by handling it that way. A. Yes, it would help to save."

"(TR p. 60) Q. Is it not true, Mr. Williams, that the bid you received from the Blankinship Lumber Co. showed that they were ready, willing, and able to pay that amount that they did in cash. A. Yes, Sir, but we didn't accept it that way."

wise would be his taxes or altogether avoid them, by means which the law permits, cannot be doubted."

Proceeding from this premise, they argue that none of the cases cited by appellee really supports its position under the facts of this case.

■ We agree with the taxpayers' general proposition and have often declared,[8] as other courts have, that the taxpayers may conduct their business so as to minimize their taxes, provided only that the arrangements are real, not sham arrangements, and are legally effective to accomplish the desired result, and that, in determining whether the means used are, or are not, effective, the fact that tax reduction is a moving cause in the choice is not a material factor.

We cannot agree with them, though, that the means adopted here had the legal effect claimed for them. This is so for two reasons. The first is that we agree with the district judge, that when the lumber company's bid was accepted, and it desired and offered to comply with it by paying the full purchase price, the taxpayers were then in constructive receipt of it, and that the self imposed limitation of the escrow device did not in fact and in law change the situation so as to make the funds any less available to, and constructively received by them. Cf. Kuehner v. Commissioner, note 6 supra.

■ The second reason is that the use of the escrow agreement did not make the sale an installment sale, within the meaning of Sec. 44, and the taxpayers were under Section 42, in receipt of the whole purchase price. Section 44, designed as it is to enable persons who make true installment sales, to report the income from them as and when the installment payments are made, is without application, for the payments under the escrow were not installment payments. Under the undisputed facts, the timber deed conveyed the timber to the purchaser without reservation of any

kind for the benefit of the sellers, and the purchaser, without reservation of any kind for its benefit, paid the full purchase price.

The judgment was right. It is affirmed.

---

8. Caldwell v. Campbell, 5 Cir., 218 F.2d 567; West v. Commissioner, 5 Cir., 214 F.2d 300, at page 303; Friedlander Corp. v. Commissioner, 5 Cir., 216 F.2d 757.