**W. B. RUSHING et al., Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 30151.**

United States Court of Appeals,
Fifth Circuit.

April 19, 1971.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Meyer Rothwacks, Harry Baum, Attys., K. Martin Worthy, Chief Counsel, I. R. S., Leonard J. Henzke, Jr., Atty., Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellant.

Edward R. Smith, Smith & Baker, Lubbock, Tex., for petitioners-appellees.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

GOLDBERG, Circuit Judge.

Here we exhume a transaction which in the government's post mortem analysis imposes a different tax consequence than that asserted by the taxpayers.

The taxpayers, W. B. Rushing and Max Tidmore,[1] each owned 50 percent of the stock in two corporations. In 1962 the taxpayers as directors voted to adopt a plan of liquidation for both corporations in accordance with the provisions of Internal Revenue Code § 337.[2] Short-

---

1. The wives of the taxpayers are parties to this suit only because joint returns were filed for the year in question.

2. Int.Rev.Code § 337 provides:
   § 337. Gain or loss on sales or exchanges in connection with certain liquidations
      (a) General rule.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

ly after the decision to liquidate, substantially all of the assets of both corporations were sold. Immediately before the end of the statutory twelve month period allowed for liquidation under § 337 both taxpayers created irrevocable trusts for each of their children and sold their stock in the two corporations to these trusts. The trustee, Lubbock Citizens National Bank, purchased the stock by paying part cash and executing notes for the remainder, payable to the taxpayers over a period of years. These notes were to be secured by the general

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

(b) Property defined.—

(1) In general.—For purposes of subsection (a), the term "property" does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

(B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and,

(C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.

(2) Nonrecognition with respect to inventory in certain cases.—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—

(A) such property so sold or exchanged, and

(B) installment obligations acquired in respect of such sale or exchange.

(c) Limitations.—

(1) Collapsible corporations and liquidations to which section 333 applies.— This section shall not apply to any sale or exchange—

(A) made by a collapsible corporation (as defined in section 341(b)), or

(B) following the adoption of a plan of complete liquidation, if section 333 applies with respect to such liquidation.

(2) Liquidations to which section 332 applies.—In the case of a sale or exchange following the adoption of a plan of complete liquidation, if section 332 applies with respect to such liquidation, then—

(A) if the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b) (1), this section shall not apply; or

(B) if the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b) (2), this section shall apply only to that portion (if any) of the gain which is not greater than the excess of (i) that portion of the adjusted basis (adjusted for any adjustment required under the second sentence of section 334(b) (2)) of the stock of the liquidating corporation which is allocable, under regulations prescribed by the Secretary or his delegate, to the property sold or exchanged, over (ii) the adjusted basis, in the hands of the liquidating corporation, of the property sold or exchanged.

(d) Special rule for certain minority shareholders.—If a corporation adopts a plan of complete liquidation on or after January 1, 1958, and if subsection (a) does not apply to sales or exchanges of property by such corporation, solely by reason of the application of subsection (c) (2) (A), then for the first taxable year of any shareholder (other than a corporation which meets the 80 percent stock ownership requirement specified in section 332(b) (1)) in which he receives a distribution in complete liquidation—

(1) the amount realized by such shareholder on the distribution shall be increased by his proportionate share of the amount by which the tax imposed by this subtitle on such corporation would have been reduced if subsection (c) (2) (A) had not been applicable, and

(2) for purposes of this title, such shareholder shall be deemed to have paid, on the last day prescribed by law for the payment of the tax imposed by this subtitle on such shareholder for such taxable year, an amount of tax equal to the amount of the increase described in paragraph (1).

assets of the trusts.[3] In each case the total purchase price payable by the trusts was an amount equal to the anticipated liquidation dividend to be paid on the stock purchased. Shortly thereafter, and still within the twelve month statutory period, the trustee, as sole shareholder of the two corporations, liquidated the corporations and collected the distribution proceeds.

In their tax returns for 1963, the year of liquidation, the taxpayers did not report their gain from the liquidation of the two corporations, but claimed instead that they had sold their stock to the trusts which were to make payments on the installment basis. Accordingly, the taxpayers contended that the gain need be reported only as the payments were received from the trusts in succeeding years under Int.Rev.Code § 453.[4] The

3. We note that the trust corpus in each case included assets in addition to the stock purchased in the transactions here in issue.

4. Int.Rev.Code § 453 provides:

§ 453. Installment method

(a) Dealers in personal property.—

(1) In general.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(2) Total contract price.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).

(b) Sales of realty and casual sales of personality.—

(1) General rule.—Income from—

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxpayable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

(2) Limitation.—Paragraph (1) shall apply—

(A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

(i) there are no payments, or

(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

(B) In the case of a sale or other disposition during a taxable year beginning before January 1, 1954, only if the income was (by reason of section 44(b) of the Internal Revenue Code of 1939) returnable on the basis and in the manner prescribed in section 44(a) of such code.

(c) Change from accrual to installment basis.—

(1) General rule.—if a taxpayer entitled to the benefits of subsection (a) elects for any taxable year to report his taxable income on the installment basis, then in computing his taxable income for such year (referred to in this subsection as "year of change") or for any subsequent year—

(A) installment payments actually received during any such year on account of sales or other dispositions of property made in any taxable year of change shall not be excluded; but

(B) the tax imposed by this chapter for any taxable year (referred to in this subsection as "adjustment year") beginning after December 31, 1953, shall be reduced by the adjustment computed under paragraph (2).

(2) Adjustment in tax for amounts previously taxed.—In determining the adjustment referred to in paragraph (1) (B), first determine, for each tax-

able year before the year of change, the amount which equals the lesser of—

(A) the portion of the tax for such prior taxable year which is attributable to the gross profit which was included in gross income for such prior taxable year, and which by reason of paragraph (1) (A) is includible in gross income for the taxable year, or

(B) the portion of the tax for the adjustment year which is attributable to the gross profit described in subparagraph (A).

The adjustment referred to in paragraph (1) (B) for the adjustment year is the sum of the amounts determined under the preceding sentence.

(3) Rule for applying paragraph (2).—For purposes of paragraph (2), the portion of the tax for a prior taxable year, or for the adjustment year, which is attributable to the gross profit described in such paragraph is that amount which bears the same ratio to the tax imposed by this chapter (or by the corresponding provisions of prior revenue laws) for such taxable year (computed without regard to paragraph (2)) as the gross profit described in such paragraph bears to the gross income for such taxable year. For purposes of the preceding sentence, the provisions of chapter 1 (other than of subchapter D, relating to excess profits tax, and of subchapter E, relating to self-employment income) of the Internal Revenue Code of 1939 shall be treated as the corresponding provisions of the Internal Revenue Code of 1939.

(d) Gain or loss on disposition of installment obligations.—

(1) General rule.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

(2) Basis of obligation.—The basis of an installment obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

(3) Special rule for transmission at death.—Except as provided in section 691 (relating to recipients of income in respect of decedents), this subsection shall not apply to the transmission of installment obligations at death.

(4) Effect of distribution in certain liquidations.—

(A) Liquidations to which section 332 applies.—If—

(i) an installment obligation is distributed in a liquidation to which section 332 (relating to complete liquidations of subsidiaries) applies, and

(ii) the basis of such obligation in the hands of the distributee is determined under section 334(b) (1),

then no gain or loss with respect to the distribution of such obligation shall be recognized by the distributing corporation.

(B) Liquidations to which section 337 applies.—If—

(i) an installment obligation is distributed by a corporation in the course of a liquidation, and

(ii) under section 337 (relating to gain or loss on sales or exchanges in connection with certain liquidations) no gain or loss would have been recognized to the corporation if the corporation had sold or exchanged such distribution,

then no gain or loss shall be recognized to such corporation by reason of such distribution. The preceding sentence shall not apply to the extent that paragraph under (1) gain to the distributing corporation would be considered as gain to which section 341(f) or section 617(d) (1), 1245(a) or 1250 (a) applies.

(5) Life insurance companies.—In the case of a disposition of an installment obligation by any person other than a life insurance company (as defined in section 801(a)) to such an insurance company or to a partnership of which such an insurance company is a partner, no provision of this subtitle providing for the nonrecognition of gain shall apply with respect to any gain resulting under paragraph (1). If a corporation which is a life insurance company for the taxable year was (for the preceding taxable year) a corporation which was not a life insurance

Commissioner, refusing to allow taxpayers the benefit of the installment sales section, determined that each taxpayer was taxable in 1963 on his gain of $301,-310, representing the difference between the proceeds received in liquidation and his basis in the stock. The Commissioner determined their income tax deficiencies accordingly.

The Tax Court, relying in part on Jacobs v. United States, S.D.Ohio, 1966, 280 F.Supp. 437, *aff'd,* 6 Cir., 390 F.2d 877, disallowed the Commissioner's deficiency determination, finding that the taxpayers should be allowed to report their gain on the stock on the installment basis.[5] Agreeing with the determination of the Tax Court, we affirm.

At the outset we feel compelled to state what this case is not about. In the first place, there is no attempt here to change the character of the gain involved and convert what would be ordinary income into capital gain. The gain realized by the taxpayers on the liquidation of the corporations, whether derived through sale on the installment basis to the trust or directly from the liquidation proceeds, would be entitled to capital gains treatment. Secondly, this is not a case where one taxpayer has attempted to shift the gain to a second taxable entity in order to reap the benefits of the second entity's lower tax rate. The price the trusts paid the taxpayers for the stock was the full value of the stock, including the appreciation in value which would be realized upon liquidation. We therefore find the Commissioner's reliance upon the anticipatory assignment of income theory entirely misplaced simply because no income was assigned. The taxpayers, in effect, kept all of the gain realized as a result of the appreciation in value of the stock. The only question is whether they must pay taxes on the entire amount of the gain in the year the corporations were liquidated or whether they may pay taxes on the entire amount over a period of years as the installment payments are received from the trusts. In essence, the determinative question is whether for tax purposes Rushing and Tidmore should be treated as if they constructively received the entire liquidation dividend in the year of liquidation or whether the sale and consequent distribution to the trusts insulates the taxpayers so that for tax purposes they are deemed to receive the payments representing their gain only as they receive the installment payments from the trusts.

This is not the first time that a taxpayer, in order to receive installment sale benefits, has created a third entity between himself and the ultimate source of his profit. *See e. g.,* Griffiths v. Helvering, 1939, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Hindes v. United States, 5 Cir. 1967, 371 F.2d 650; Hindes v. United States, 5 Cir. 1964, 326 F.2d 150; Williams v. United States, 5 Cir. 1955, 219 F.2d 523; Pozzi v. Commissioner of

---

company, such corporation shall, for purposes of this paragraph and paragraph (1), be treated as having transferred to a life insurance company, on the last day of the preceding taxable year, all installment obligations which it held on such last day. A partnership of which a life insurance company becomes a partner shall, for purposes of this paragraph and paragraph (1), be treated as having transferred to a life insurance company, on the last day of the preceding taxable year of such partnership, all installment obligations which it holds at the time such insurance company becomes a partner.

(e) Carrying charges not included in total contract price.—If the carrying charges or interest with respect to sales of personal property, the income from which is returned under subsection (a) (1), is not included in the total contract price, payments, received with respect to such sales shall be treated as applying first against such carrying charges or interest. This subsection shall not apply with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in subsection (a) (1).

5. Rushing v. Commissioner of Internal Revenue, 1969, 52 T.C. 888.

Internal Revenue, 1967, 49 T.C. 119. We think it clear from a reading of these cases that a taxpayer may, if he chooses, reap the tax advantages of the installment sales provision if he actually carries through an installment sale, even though this method was used at his insistence and was designed for the purpose of minimizing his tax. Williams v. United States, *supra*, 219 F.2d at 527; Pozzi v. Commissioner of Internal Revenue, *supra*, 49 T.C. at 128. On the other hand, a taxpayer certainly may not receive the benefits of the installment sales provisions if, through his machinations, he achieves in reality the same result as if he had immediately collected the full sales price, or, in our case, the full liquidation proceeds. As we understand the test, in order to receive the installment sale benefits the seller may not directly or indirectly have control over the proceeds or possess the economic benefit therefrom. In Griffiths v. Helvering, *supra*, the Supreme Court denied installment sale benefits to a seller who arranged for an intermediate corporation which he wholly controlled to collect the full sales price from the buyer and pay it over to him in installments. In *Griffiths* the Court said:

> "We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid.' Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L. Ed. 916, 917. And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or

the maintenance of effective benefit through the interposition of a subservient agency. Cf. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355." 308 U.S. at 357, 60 S.Ct. at 278.

■ Applying these principles to the instant case, we find that the taxpayers here are entitled to the benefits of the installment sale provision. The sale to the trusts deprived the taxpayers of the immediate right to realization of the liquidation dividends. An autonomous entity controlled the proceeds, and no right of recapture inured to the benefit of the taxpayers. The Tax Court found, and we think the evidence supports the finding, that the trustee was independent of the taxpayers' control.[6] Thus the intervening third party, the trustee, was neither a puppet nor an economic serf. The taxpayers retained no effective benefit or control over the liquidation dividend. Absent the possibility of control or recapture, the alienation of the stock cannot be hyphenated for tax purposes by merely labeling the transaction an assignment of income or constructive receipt. Here there was no possibility of recapture or control. The trustee was no alter ego of the taxpayers; it had independent duties and responsibilities to persons other than the taxpayers. The taxpayers' only effective means of obtaining the benefit of the liquidation proceeds was under the contract of sale with the trust a contract which provided for payments to be made on the installment basis. The taxpayers therefore are entitled to report their gain as it is received by them.

For the foregoing reasons the decision of the Tax Court is affirmed.

---

6. The Commissioner seems to suggest that the trustee was not independent because the settlors retained the right to remove the trustee. We note, however, that this right of removal was severely limited.

As we read the trust instrument only a bank could be appointed as a replacement trustee, and further no bank in which the settlors had a significant interest could ever be appointed trustee.