Charles B. NYE and wife,
Mary Jane Nye,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. C-374-D-73.

United States District Court,
M.D. North Carolina,
Durham Division.

May 16, 1975.

R. Roy Mitchell, Jr., Durham, N. C., for plaintiff.

N. Carlton Tilley, Jr., U. S. Atty., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GORDON, Chief Judge.

This action is before the Court on cross motions for summary judgment. The parties have stipulated to all material facts, which stipulations constitute the Court's Findings of Fact.

### I.

#### JURISDICTIONAL FACTS

1. The plaintiffs in the above-styled action are Charles B. and Mary Jane Nye, who reside as husband and wife in the City and County of Durham, North Carolina.

2. The defendant is the United States of America.

3. This action is brought by the plaintiffs for the refund of federal income taxes.

4. Plaintiffs timely filed Joint United States Individual Tax Returns (Forms 1040) for the calendar years 1969 and 1970.

5. Upon audit of plaintiffs' calendar year returns for 1969 and 1970, the following deficiencies were proposed and assessed as indicated:

|  | 1969 | 1970 |
|---|---|---|
| Deficiency | $24,979.14 | $2,201.11 |
| Interest | 4,535.68 | 173.31 |
| TOTAL | $29,514.82 | $2,374.42 |

6. The $31,889.24 assessment set forth above was fully satisfied by payments made on August 16, 1972, May 18, 1973, and May 23, 1973.

7. On May 25, 1973, plaintiffs timely filed claims for refund (Form 843) for the calendar years 1969 and 1970 in the respective amounts of $27,943.89 and $389.44.

8. By letter dated July 20, 1973, plaintiffs were sent a preliminary letter of claim disallowance.

9. This Court has jurisdiction over the parties and the subject matter of this action by virtue of Section 1346(a)(1), Title 28, United States Code.

10. The exact refund, if any, to plaintiffs as a result of this action, together with interest according to law, will be ascertained within sixty (60) days after the Court files its opinion, on the basis of a recomputation by the Internal Revenue Service, agreed to by both parties. In the event the parties fail to agree upon the amount of the refund, the parties will submit the matter to the Court for resolution upon the basis of a supplemental stipulation of facts or the submission by the parties of such additional data as may be required.

### II.

#### SUBSTANTIVE FACTS

11. Charles B. Nye is a practicing attorney and a partner in a law firm in Durham, North Carolina.

12. Mary Jane Nye is a licensed medical physician engaged in private practice in Durham, North Carolina.

13. At all times material to this action plaintiffs were engaged in the practicing of the respective professions.

14. As such, plaintiffs Charles B. and Mary Jane Nye maintained separate checking accounts for the proceeds derived from the practice of their respective professions as well as for the proceeds of their investments.

15. Plaintiffs, however, maintained a joint checking account for living expenses.

16. In 1964, upon the advice of her husband, plaintiff Mary Jane Nye invested $30,134.00 in the stock of Colorcraft Corporation.

17. The monies used for the aforesaid purchase of Colorcraft stock by plaintiff Mary Jane Nye were drawn from her separate checking account.

18. Plaintiff Mary Jane Nye has always listed the Colorcraft stock as her separate property on her North Carolina Intangible Tax Return.

19. Subsequent to plaintiff Mary Jane Nye's purchasing the Colorcraft stock, Colorcraft Corporation merged with Fuqua Industries, which resulted in plaintiff Mary Jane Nye receiving eight hundred thirty-four shares of Preferred "B" stock in Fuqua Industries in exchange for her Colorcraft stock.

20. In the fall of 1968, plaintiff Charles B. Nye became a principal financier for a construction project to be undertaken by the Nello Teer Company for the construction of a building for the Wright Machinery Company, Inc.

21. As a direct result of plaintiff Charles B. Nye's venture in the aforesaid construction project, he was contractually obligated, *inter alia,* to make a $100,000.00 payment to a third party in June of 1969.

22. Although plaintiff Charles B. Nye had ample resources of his own at his disposal to meet the said $100,000.00 contractual obligation, he and his wife (i. e., plaintiff Mary Jane Nye) decided upon a course of action at his instigation wherein he would purchase the aforesaid Fuqua stock · from his wife and then subsequently sell the same in order to realize proceeds with which to meet the said $100,000.00 contractual obligation.

23. To this end, plaintiff Charles B. Nye acquired, on February 3, 1969, 334 shares of Fuqua Industries stock from his wife (i. e., plaintiff Mary Jane Nye) on the following basis: $10,125.00 in cash and a promissory note from Charles B. Nye made payable to Mary Jane Nye in the amount of $111,375.00 payable in eleven equal annual installments plus interest at the annual rate of four per cent.

24. There is neither any dispute that the price paid by plaintiff Charles B. Nye to plaintiff Mary Jane Nye for the 334 shares of Fuqua Industries stock did in fact constitute the fair market value of the Fuqua stock, nor is there any dispute that plaintiff Charles B. Nye has in fact paid the annual installments plus the specified interest called for by said promissory note.

25. As a result of this transfer between plaintiffs, plaintiff Mary Jane Nye recognized a long-term capital gain in the amount of $109,432.58, which she reported on the installment basis on Schedule D of plaintiffs' 1969 Joint Individual Income Tax Return (Form 1040).

26. Shortly after the aforesaid transaction between plaintiffs, plaintiff Charles B. Nye converted the 334 preferred Fuqua shares acquired from his wife into common stock, whereby he received 2,672 shares of Fuqua common stock.

27. On or about June 25, 1969, plaintiff Charles B. Nye sold 2,500 shares of the aforesaid Fuqua common stock through a registered broker for $100,-381.72 recognizing a short-term capital loss of $13,297.44, which he reported on Schedule D of plaintiffs' 1969 Joint Individual Income Tax Return (Form 1040). Plaintiff Charles B. Nye still holds the balance of his Fuqua common stock and plaintiff Mary Jane Nye still owns 4,596 shares of Fuqua common stock, having converted her preferred to common.

28. At the time (February 3, 1969) plaintiff Mary Jane Nye transferred the Fuqua stock to plaintiff Charles B. Nye, both parties were aware that the latter intended to sell the same stock in order to meet his contractual liabilities some four months hence.

29. The underlying purpose of structuring the purported installment sale of the Fuqua stock by plaintiff Mary Jane Nye to plaintiff Charles B. Nye and the subsequent resale by the latter on the open market was to enable plaintiff Mary Jane Nye to pay less taxes on the resulting capital gain as well as affording plaintiff Charles B. Nye access to monies at a four per cent rate of interest rather than eight per cent.

30. Plaintiff Charles B. Nye's net worth during the years 1968 and 1969 was approximately $1,500,000.00 to $1,800,000.00.

31. Plaintiff Charles B. Nye had ample resources of his own that would have enabled him to pay plaintiff Mary Jane Nye the entire purchase price on the date of purchase if he so desired.

32. Plaintiff Mary Jane Nye would have sold some or all of her Fuqua stock on the open market had she not consummated the installment transaction with plaintiff Charles B. Nye.

33. The value of Fuqua stock has greatly diminished since the transaction between the plaintiffs.

## III.

## DISCUSSION AND CONCLUSIONS OF LAW

Upon the foregoing facts, the Internal Revenue Service (I.R.S.) concluded that Charles B. Nye acted as the agent of Mary Jane Nye in the sale of the Fuqua Industries securities. Accordingly, the I.R.S. disallowed Mary Jane Nye's use of Section 453(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 453(b) [1] to report her gain on the sale by the installment method. See Rev.Rul. 73–536, 1973–49 Int.Rev.Bull. 13.

---

1. Internal Revenue Code of 1954 (26 U.S.C.) : § 453. *Installment method.*
   (a) [as amended by Sec. 3(a), Act of August 31, 1964, P.L. 88–539, 78 Stat. 746] *Dealers in Personal Property.*—
   (1) *In general.*—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.
   (2) Total contract price.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).
   (b) *Sales of realty and casual sales of personalty.*—

(1) *General rule.*—Income from—
   (A) a sale or other disposition of real property, or
   (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).
(2) Limitation.—Paragraph (1) shall apply—
   (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—
      (i) there are no payments, or
      (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.
   (B) In the case of a sale or other disposition during a taxable year beginning before January 1, 1954, only if the income was (by reason of section 44(b) of the Internal Code of 1939) returnable on the basis and in the manner prescribed in section 44(a) of such code.

This is not an easy case. Although both parties have submitted excellent and comprehensive briefs, no case has been found which cannot be readily distinguished. Therefore, the Court has searched for what appears to be the most appropriate standard or test to apply to the transaction at issue here. It is believed that standard is found in *Rushing v. Commissioner of Internal Revenue Service*, 441 F.2d 593 (5th Cir. 1971). Although *Rushing* is not factually similar to the case at bar, its discussion of the principles applicable to a contested installment sale is deemed to be an accurate and comprehensive exposition of the controlling law.

> "We think it clear from a reading of these cases that a taxpayer may, if he chooses, reap the tax advantages of the installment sales provision if he actually carries through an installment sale, even though this method was used at his insistence and was designed for the purpose of minimizing his tax. *Williams v. United States, supra,* 219 F.2d [523] at 527; *Pozzi v. Commissioner of Internal Revenue, supra,* 49 T.C. [119] at 128. On the other hand, a taxpayer certainly may not receive the benefits of the installment sales provisions if, through his machinations, he achieves in reality the same result as if he had immediately collected the full sales price, or, in our case, the full liquidation proceeds. As we understand the test, in order to receive the installment sale benefits the seller may not directly or indirectly have control over the proceeds or possess the economic benefit therefrom. In *Griffiths v. Helvering, supra,* [308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319] the Supreme Court denied installment sale benefits to a seller who arranged for an intermediate corporation which he wholly controlled to collect the full sales price from the buyer and pay it over to him in installments. In *Griffiths* the Court said:
>
> > " 'We cannot too often reiterate that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss v. Bowers,* 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916, 917. And it makes no difference that such "command" may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. Cf. *Gregory v. Helvering,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.' 308 U.S. at 357, 60 S.Ct. at 278." 441 F.2d 593, 598.

It is evident that the sole reason the I.R.S. has denied Mary Jane Nye the benefit of the installment method of reporting her gain is because of the marriage relationship existing between her and the purported installment purchaser. Obviously, such a relationship renders the transaction suspect, but here the I.R.S. has automatically and perfunctorily concluded that any person is the agent of his or her spouse for the purposes of section 453(b) installment method reporting. This rule would probably be valid in the vast majority of installment sale transactions between spouses. But the facts of the present dispute make plain that under no objective analysis could Charles B. Nye be said to be the agent of Mary Jane Nye.

The plaintiffs are two, separate, and, evidently, very healthy economic entities. Both maintain substantial personal estates separate and apart from each other. Given the facts of this case, it is impossible to conclude that Mary Jane Nye "directly or indirectly [had] control over the proceeds or possess[ed] the economic benefit" from the sale of the Fuqua stock by Charles B. Nye. Mary Jane Nye retained no effective benefit or control over the proceeds of the sale by her husband; she received only what section 453(b) entitles her to —a tax benefit. The absence of retained control or benefit by Mary Jane Nye significantly distinguishes this transac-

tion from those involved in the cases cited by defendant.

■ Defendant's reliance upon Rev. Rul. 73–157, Int.Rev.Bull. 1973–14, 6, and the concept of a prearranged plan is also misplaced. The prearranged plan argument only makes sense when a three party transaction makes use of a straw man as a conduit between the first and third parties. *See e. g.,* Rev.Rul. 73–157, *supra.* The I.R.S. has made no contention that there was any plan between Mary Jane Nye and the Nello Teer Company or the Wright Machinery Company. Certainly the I.R.S. cannot be contending that any time an installment purchaser makes it known to the installment seller that he or she plans to resell at some future date the installment seller immediately loses his or her right to report gain pursuant to section 453(b).

■ By way of summary, it should be reemphasized that the facts of this case are rather uncommon. Good reason exists for the I.R.S. to be suspicious of tax saving transactions between spouses, but here nothing was done between Dr. and Mr. Nye which could not have been legitimately done between Mary Jane Nye and any stranger.[2] The simple fact of their marriage relationship, standing alone without anything more to support an adverse inference, is insufficient to deprive Mary Jane Nye of the benefits of section 453(b).

Accordingly, a judgment will be entered.

---

2. It is well settled in the State of North Carolina that contracts between husband and wife are valid and enforceable. N.C. Gen.Stat. § 52–10; *Battle v. Mayo,* 102 N.C. 413, 9 S.E. 384 (1889).