Paul G. LUSTGARTEN and Jacqueline Lustgarten, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 79–2306.

United States Court of Appeals, Fifth Circuit.

March 16, 1981.

Michael R. Harris, Blue Bell, Pa., Wm. H. Cook, Jr., New Orleans, La., for petitioners-appellants.

Stuart E. Seigel, Chief Counsel, Lester Stein, Atty., Internal Revenue Service, Washington, D. C., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Appellate Section, Gary R. Allen, Helen A. Buckley, Attys., James A. Riedy, Tax Division, Dept. of Justice, Washington, D. C., for respondent-appellee.

Before RONEY, HILL and FAY, Circuit Judges.

PER CURIAM:

Taxpayer appeals from the decision of the Tax Court, 71 T.C. 303, upholding a finding of deficiency in his income taxes for 1971. The issue is whether the taxpayer is entitled to report on an installment sale basis the sale of stock to his son. Because we agree with the Tax Court that the taxpayer had "constructive receipt" in 1971 of the entire proceeds from the sale of the stock, we affirm the denial of installment sale treatment.

In 1971, taxpayer Paul Lustgarten owned 67,600 shares of stock in Cooper Laboratories, Inc. He decided to divest a substantial portion of this stock because it paid virtually no dividends and was subject to restrictions on transfer.

On November 15, 1971, Lustgarten and members of his family, chiefly his son Bruce, entered into a series of five agreements which ultimately resulted in a purported installment sale of this stock. Lustgarten first entered into an "Installment Sales Contract" to sell 42,000 shares to Bruce for $1,017,590.69. A non-recourse "Installment Note" was also executed, which provided that Lustgarten would be paid in 120 monthly installments with interest of four percent, although Bruce had the option to satisfy the note in full at any time. Bruce did not have the funds to pay the entire amount in cash.

Bruce promised to secure the note by purchasing $1,017,590.69 worth of shares in a mutual fund, Sigma Investment Shares, and by delivering these shares to American Guaranty and Trust Company as escrow agent. An "Escrow Agreement" provided that the monthly payments to the father were to be made out of the escrow fund from the "income, dividends, capital gains distribution and/or from the proceeds of liquidation" of such shares. The escrow

account could be terminated, thereby freeing up the remaining Sigma shares, if the taxpayer and Bruce jointly agreed. The agreement also provided that administrative expenses, as well as any increase in Bruce's taxes as a result of the installment sale transaction, would be paid for out of the funds held in escrow.

The fourth transaction was the formation of an irrevocable trust which named Lustgarten's daughter Elaine as beneficiary and her brother Bruce and her uncle, Benjamin Lustgarten, as co-trustees. The trust had an initial funding of ten dollars.

Finally, a "Joint Venture Agreement" was entered into between Bruce Lustgarten, individually, and Bruce and his uncle as trustees of the trust for Elaine. It stated that the Installment Sale Contract was entered into on behalf of the parties jointly, and that each party would supply initial capital of ten dollars each.

For 1971, the taxpayer reported capital gains on the Cooper stock to the extent of the installment payments he had received that year from the escrow account, pursuant to the installment sales provision of section 453 of the Internal Revenue Code. On July 23, 1976, the IRS issued a statutory notice of deficiency for 1971 in the amount of $346,075.00, which represented the tax due on the entire proceeds from Bruce's sale of the Cooper stock.

In upholding the deficiency, the Tax Court held that Lustgarten had constructive receipt in 1971 because of his control over the proceeds. The court found this control evidenced by Bruce's forced resale and reinvestment of the Cooper stock, pursuant to the agreements with taxpayer and by Bruce's willingness to convey the escrowed shares to his father in certain circumstances.

■ The general rule in tax law is that the entire amount of gain from the sale of property is taxed in the year of sale. I.R.C. § 451. This gain is the excess of the amount realized over the basis of the property. I.R.C. § 1001.

■ Section 453 provides relief for taxpayers who do not receive all of the proceeds from the sale at once. This section permits the taxpayer to pay tax only on the gain realized on the sale in proportion to the amount of installment payments received in that year. *See Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 503, 68 S.Ct. 695, 699, 92 L.Ed. 831 (1948).

■ Section 453, however, does not apply if the taxpayer has entered into an arrangement which is in form but not in substance a true installment sale. *See Griffiths v. Commissioner*, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939); *Williams v. United States*, 219 F.2d 523 (5th Cir. 1955). Under the test set forth by this Court in *Rushing v. Commissioner*, 441 F.2d 593, 598 (5th Cir. 1971), a taxpayer is entitled to installment sale treatment only if he does not directly or indirectly have control over the proceeds from the sale or possess the economic benefit therefrom.

■ Lustgarten fails to satisfy the *Rushing* test. Through the series of agreements entered into with his son, Lustgarten effectively controlled the sale of the Cooper stock, the reinvestment of the proceeds in shares in the Sigma fund, and the placing of those shares in escrow. Since Bruce was unable to exercise independent control over these transactions, he served as little more than an agent for his father.

In addition, Lustgarten retained control over the decision to reinvest the escrowed funds if the Sigma shares proved to be an undesirable investment. Under the escrow agreement, Bruce could not independently order the sale of the Sigma shares. The shares could be removed only if Bruce and his father jointly agreed to terminate the escrow and have the shares conveyed to taxpayer.

Lustgarten also had considerable access to the escrowed funds, although his son's approval was technically required. Bruce testified that he would agree to the withdrawal of the escrowed funds and convey them to his father in case of a medical emergency, or if the value of the Sigma

shares began to decline appreciably. Bruce also admitted that he might have agreed to release the funds if his father required them for a business venture.

That Lustgarten had no *legal* control to obtain the escrowed funds independently of Bruce makes no difference. The Supreme Court held in *Griffiths* that control may be evidenced by "the maintenance of effective benefit through the interposition of a subservient agency." 308 U.S. at 357, 60 S.Ct. 278. Bruce's testimony indicates that he was not sufficiently independent of the taxpayer's control, and that the shares in the escrow account were not entirely beyond taxpayer's reach.

The extent of Lustgarten's control over the proceeds from the sale of the stock distinguishes this case from those cited by taxpayer in which related party installment sales transactions were upheld. The majority of those cases involved taxpayer's sale of stock on an installment basis to an irrevocable trust established for his family, where the trustee was a bank or other independent party. *See, e. g., Rushing v. Commissioner, supra; Weaver v. Commissioner*, 71 T.C. 443 (1978); *Roberts v. Commissioner*, 71 T.C. 311 (1978); *Pityo v. Commissioner*, 70 T.C. 225 (1978). Such transactions have been considered true installment sales because the trustee, having independent fiduciary duties to the trust, was not subject to the control of the taxpayer. Thus, unlike here, the taxpayer in each of those cases was unable to require or prevent the trustee's sale of the stock or to control any subsequent reinvestment. Moreover, there was no possibility that the taxpayer could immediately realize the full benefit from the sale of the stock, because the proceeds were placed in an irrevocable trust. Such a possibility exists when, as here, the proceeds are deposited in an escrow account terminable by agreement of the parties. *Cf. Harris v. Commissioner*, 477 F.2d 812 (4th Cir. 1973); *Williams v. United States*, 219 F.2d 523 (5th Cir. 1955); *Pozzi v. Commissioner*, 49 T.C. 119 (1967).

Unlike in the trust cases cited by Lustgarten, the trust created here has little significance as a means of restricting the freedom of action of either the taxpayer or his son. First, the trustee is not a bank or other independent party but rather the son, who has conceded that he would convey the proceeds to taxpayer under certain circumstances. Second, the trust indenture provided that the trustee, in his sole discretion, could terminate the trust if the principal of such trust was valued at less than $25,000, if the amount of principal did not warrant the cost of continuing such trust, or if its administration was otherwise impractical. From its inception, then, when it was funded with only ten dollars, the trust was subject to termination by Bruce. Finally, Bruce has demonstrated a lack of awareness of his fiduciary duties to the trust, and in fact, has admitted that he unknowingly violated a trust provision by not appointing a successor to his deceased uncle, the co-trustee.

Lustgarten also cites *Nye v. United States*, 407 F.Supp. 1345 (M.D.N.C.1975), which upheld a wife's sale of stock on an installment basis to her husband. In *Nye*, however, the court found a legitimate business purpose for the sale in the husband's desire for capital at a low interest rate. The primary purpose for the transaction between Lustgarten and his son was simply to avoid the immediate realization of gain from the sale of his stock. *See Wrenn v. Commissioner*, 67 T.C. 576 (1976). Moreover, in *Nye*, it was the purchaser of the stock who prompted the sale rather than the seller, which further indicates that the sale was not arranged simply for tax avoidance purposes.

We conclude that Lustgarten was not entitled to installment sale treatment, because he had constructive receipt in 1971 of the proceeds from the resale of the stock by his son. The decision of the Tax Court is affirmed.

We note that the precedential value of our holding is limited by the Installment Sale Revision Act of 1980, which now denies section 453 treatment to related party installment sale transactions of the type found here. The effect of the decision in

this case is thus primarily applicable only to those transactions entered into prior to the March 14, 1980 effective date of the Act.

AFFIRMED.

HILL, Circuit Judge, dissenting:

I dissent. Nothing in the record convinces me that the taxpayer in this case constructively received or had the beneficial use in 1971 of the proceeds of the sale of the Cooper stock. *See Rushing v. Commissioner*, 441 F.2d 593, 598 (5th Cir. 1971). Neither the Installment Sale Agreement nor the Escrow Agreement, as I read them, provided the taxpayer with any rights to those proceeds other than the right to receive monthly installment payments. Thus, I believe the taxpayer is entitled to the tax benefit provided by section 453(b).

It is not disputed that the taxpayer complied with the technical requirements of section 453(b). Rather, the Commissioner argues that the requirements of section 453(b) were not met in substance because the arrangement between the taxpayer and his son was not a "true" installment sale. *See Griffiths v. Commissioner*, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939).

The question is not an easy one. The fact that the sale was between members of the same family gives rise to suspicion, but it is not dispositive. *See, e. g., Nye v. United States*, 407 F.Supp. 1345 (M.D.N.C.1975). Nor is the fact that the taxpayer and his son prearranged that the installments were to be payable from stipulated mutual funds dispositive. *See generally Pityo v. Commissioner*, 70 T.C. 225 (1975). Likewise, it is not dispositive that the taxpayer fully expected the stock to be resold and the proceeds reinvested in assets which would be placed in escrow and from which the installments would be paid. *See generally Roberts v. Commissioner*, 71 T.C. 311 (1978). The decisive issue, as I understand the *Rushing* test, is whether the taxpayer had control over and access to the proceeds of the initial sale.

No such access is in evidence here. Under this arrangement, the taxpayer is legally entitled to nothing more than the monthly installment payments. The taxpayer needed the approval of his son to obtain a greater portion of the funds, and there is evidence indicating that the son would exercise his independent judgment before providing such access. The fact that the taxpayer enjoyed a "good relationship" with his son does not suggest that the taxpayer could control the funds his son held in trust. Furthermore, there is evidence indicating that the son refused to provide all of the security for the installment sale which the taxpayer suggested; thus it is clear that the taxpayer did not dictate the terms of the arrangement. It is true that the taxpayer did bear the risk that the security would decrease in value, but it is also true that he would not benefit if the security increased in value. Finally, the fact that the taxpayer could, upon certain contingencies, accelerate the installment payments does not suggest that he had control over or access to the fund from which the payments were made. The taxpayer should be held liable for the tax consequences if and when he opts to accelerate; he should not be taxed because he may accelerate.

Finally, it should be noted that the son here was not a mere conduit. He had independent economic reasons for entering into this arrangement: he would benefit from any growth in the escrowed mutual funds. The taxpayer too had economic reasons: the arrangement was in part designed to transfer some of his assets to his children. This was not an arrangement merely to delay the transfer of the purchase price to the taxpayer. *Cf. Williams v. United States*, 219 F.2d 523 (5th Cir. 1955).

Accordingly, I disagree with the court's decision to deny the taxpayer the benefit provided by section 453(b).